## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## (609) 989-2182

CHAMBERS OF
**FREDA L. WOLFSON**
CHIEF UNITED STATES DISTRICT JUDGE

Clarkson S. Fisher Federal
Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

March 23, 2020

Anthony P. La Rocco, Esq.
K&L Gates LLP
One Newark Center, Tenth Floor
Newark, NJ 07102

Gurbir S. Grewal, Esq.
Attorney General of New Jersey
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 117
Trenton, NJ 08625

RE:    ***NJ Spine Society, Inc. v. Caride, et al.***
       <u>**Civil Action No.: 18-17448**</u>

Counsel:

Before the Court is a Motion to Dismiss filed by Defendants Marlene Caride, Commissioner of the New Jersey Department of Banking and Insurance; Gurbir S. Grewal, Attorney General of the State of New Jersey; and Shereef Elnahal, Commissioner of the New Jersey Department of Health (collectively, "Defendants"). The Motion seeks dismissal of the Complaint of Plaintiff NJ Spine Society, Inc. ("Plaintiff"). In the Complaint, Plaintiff alleges that the New Jersey Out-of-network Consumer Protection, Transparency, Cost Containment and Accountability Act ("the Act"), is preempted by the Employee Retirement Income Security Act of

-1-

1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). After Defendants initially moved to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court ordered the parties to submit supplemental briefing on whether Plaintiff had Article III standing to challenge the Act. For the following reasons, I find that Plaintiff lacks standing, and Plaintiff's Complaint is dismissed, without prejudice.

On June 1, 2018, the New Jersey Legislature enacted the Act to protect covered persons from "surprise" medical bills. N.J.S.A. 26:255-2. The Act, among other things, imposes certain disclosure requirements on health care providers and health insurance carriers; places limitations on charges recoverable by out-of-network providers in certain situations; and establishes a binding arbitration system for certain emergency and out-of-network billing disputes between providers and carriers. *See generally* N.J.S.A. 26:2SS-1 to -20. As relevant here, under Section 9 of the Act, carriers have certain responsibilities to persons covered under self-funded health benefits plans covered by ERISA. *See* N.J.S.A. 26:2S5-9. Pursuant to Section 9, if a covered person receives inadvertent out-of-network services, or treatment at an out-of-network health care facility on an emergency or urgent basis, the carrier must ensure that the covered person's financial liability is limited to network cost sharing. N.J.S.A. 26:2SS-9(a). Importantly, a self-funded plan may choose to be subject to these provisions. N.J.S.A. 26:2SS-9(d). For plans that opt into Section 9, Section 10 of the Act creates an arbitration process to resolve out-of-network billing disputes for involuntary and inadvertent out-of-network claims. N.J.S.A. 26:2SS-10. Plaintiff contends that, in giving self-funded ERISA plans the choice to opt into the statute's claims adjudication and payment provisions, the Act "effectively allows such plans to 'opt out' of the requirements of ERISA," and is, thus preempted by ERISA. Complaint at ¶¶ 2-3.

-2-

Plaintiff is a New Jersey non-profit corporation whose members comprise New Jersey-based spine surgeons and their practice groups. *Id.* at ¶¶ 15, 16, 28. Plaintiff's members "either are assigned benefits under self-funded ERISA plans, and/or are granted limited powers of attorney to pursue claims for benefits under self-funded ERISA plans." *Id.* at ¶ 19. Plaintiff contends that it has "Article III standing to sue on behalf of its members under the doctrine of associational standing, whereby an association may sue to redress the injuries of its members, even without a showing of injury to the association itself." *Id.* at ¶ 18. In that regard, Plaintiff contends that "the injury to NJSS's members commenced immediately upon the OON Act's effective date" because, at that time, its "members were stripped of their procedural and substantive rights under ERISA." *Id.* at ¶ 19.

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint for lack of standing. Fed. R. Civ. P. 12(b)(1); *see also Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175 (3d Cir. 2000). Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Indeed, "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The standing inquiry ... focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)) (alterations original). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S.

490, 518 (1975)) (footnote omitted).

To show standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)) (internal quotations and citations omitted). To show injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Nickelodeon*, 827 F.3d at 272 (quoting *Finkelman*, 810 F.3d at 193). Further, under the doctrine of associational standing, absent injury to the organization itself—which is not alleged here—an association may pursue claims solely as a representative of its members. *See, e.g., New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1 (1988). In order to assert associational standing on behalf of its members, an association must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

In the present matter, Defendants argue that Plaintiff fails the first prong of the associational standing inquiry: that Plaintiff's members would not otherwise have standing to sue in their own right. In that regard, they contend that Plaintiff's members have not suffered an injury-in-fact, as any injury caused by the Act's provisions is conjectural or hypothetical. I agree. Under the Act, ERISA plans are only subject to Section 9's claims processing and adjudication provisions if they elect to opt into the provision. It is this statutory section that, according to Plaintiff, is

preempted as it applies to ERISA plans. However, Plaintiff does not allege that any of its members have been assigned or been granted power of attorney rights by ERISA plans that have, in fact, opted into Section 9, or that a such a plan is imminently opting in. Absent such an allegation, Plaintiff has only alleged a hypothetical injury, as a sufficiently concrete injury can occur only when one of its members is impacted by Section 9, *i.e.* when the subject ERISA plan opts into or imminently will opt into Section 9.

In response, Plaintiff offers two arguments as to why, even if no subject plan has opted into Section 9, an injury is imminent. Plaintiff first argues that, by enabling self-funded ERISA plans to opt into Section 9, the Act deprives Plaintiff's members of the certainty that such plans will be subject to ERISA's claims adjudication scheme. This uncertainty, it contends, is sufficient to confer standing. Yet, while uncertainty about the potential future impact of a regulation on a company's business can, at times, satisfy the standing inquiry, *see, e,g, Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490 (7th Cir. 2005), merely asserting that a statute or regulation has increased a business's planning uncertainty will not suffice. *See Silicon Econ., Inc. v. Fin. Accounting Found.*, No. 11-163, 2011 WL 3742182, at *5 (D. Del. Aug. 18, 2011) (noting that if "uncertainty is always deemed sufficient, standing would become a meaningless requirement"). Indeed, a case cited by Plaintiff in support of its argument, *Geneva Coll. v. Sebelius*, 929 F. Supp. 2d 402, 422 (W.D. Pa. 2013), illustrates this point. There, the court held that a religious college had standing to challenge the Affordable Care Act's contraceptive mandate because it alleged concrete harms caused by future uncertainty, including that the plaintiff "require[d] substantial lead time to prepare for future health care plan years;…was suffering monetary harm in planning for the contraceptive requirement; and that its employee and student

-5-

recruitment efforts [had] been burdened as a result of uncertainty surrounding its health care plans." *Id.* Here, because Plaintiff has not alleged precisely how any uncertainty caused by the Act has impacted its members, it has not sufficiently alleged standing under this theory.

Second, Plaintiff argues that it has standing to sue on behalf of its members because the structure of the statute will "inevitably create market incentives for insurers offering plan administration services to steer its self-funded plan clients to elect coverage under the law." ECF No. 22 at 6. Plaintiff is correct that probabilistic injuries, such as a statute that incentivizes a defendant or a third party to injure a plaintiff, have, on occasion, given rise to standing. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 7 (1978) (granting plaintiffs standing to challenge statute that capped liability for nuclear reactor accidents, because statute created incentives for defendant to build and operate nearby nuclear reactor that would release small quantities of radiation into the air and water, and injury from that radiation was "uncertain[ ]" but sufficiently likely). But, as with the previous argument, Plaintiff must demonstrate precisely how the statute's incentive structures work, so that the Court can evaluate whether these incentives result in a sufficiently concrete injury. Here, Plaintiff points to one letter from a single health plan administrator encouraging its members to opt into the statute as evidence of such an injury, but this, by itself, does not demonstrate "inevitable" market incentives to elect coverage under the law. Thus, Plaintiff has failed to establish that it has standing under this theory, as well.[1]

---

[1] Plaintiff also argues that it has standing because, even if a plan does not opt into Section 9, it is still subject to the member arbitration provision of Section 11 of the Act. However, under this section, any decision to submit to binding arbitration would be a voluntary decision solely in the hands of Plaintiff's member. N.J.S.A. 26:2SS-11. If one of Plaintiff's members chooses to submit a payment dispute to arbitration, it may do so. Plaintiff does not allege that any of its members has voluntarily submitted to this arbitration system, and Plaintiff has not demonstrated how any such injury is imminent.

Finally, Defendants argue that Plaintiff should not be given leave to amend because its claims necessarily "require[ ] the participation of individual members in the lawsuit," *Hunt v.*, 432 U.S. at 343, and, thus, fail the third prong of the associational standing analysis. However, Plaintiff seeks only declaratory and injunctive relief, and "[i]t is almost a bright-line rule 'that requests by an association for declaratory and injunctive relief do not require participation by individual association members.'" *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 207 (D.N.J. 2003) (quoting *Hosp. Council of W. Pennsylvania v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991)). To that end, Plaintiff's claims seek declaratory and injunctive relief based on ERISA preemption, which is "primarily a question of law," *Jeter v. Brown & Williamson Tobacco Corp.*, 113 F. App'x 465, 467 (3d Cir. 2004), and, thus, will not require the type of "fact-intensive-individual inquiry" that makes associational standing improper. *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs.*, Inc., 280 F.3d 278, 286 (3d Cir. 2002). *See also Hosp. Council of W. Pennsylvania*, 949 F.2d at 89 (3d Cir. 1991) ("[S]o long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members entitled to invoke the court's jurisdiction."). Moreover, a complaint should only be dismissed with prejudice if permitting further amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002). While Plaintiff has not sufficiently alleged that it has standing, it is not implausible that it may day so, and, thus, permitting further amendment would not necessarily be futile.

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiff's claims are dismissed, without prejudice. Plaintiff has thirty (30) days from the date of this Order

to file an amended complaint, consistent with this Order.


                                                     /s/ Freda L. Wolfson
                                                     Hon. Freda L. Wolfson
                                                    U.S. Chief District Judge