ANTHONY P. LA ROCCO
GEORGE P. BARBATSULY
STACEY A. HYMAN
**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*The New Jersey Spine Society*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NJ SPINE SOCIETY, INC.,<br><br>　　　Plaintiff,<br><br>v.<br><br>MARLENE CARIDE, in her Official Capacity as COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE, GURBIR S. GREWAL, in his Official Capacity as ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, and SHEREEF ELNAHAL, in his Official Capacity as COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF HEALTH,<br><br>　　　Defendants. | Hon. Freda L. Wolfson, U.S.D.J.<br><br>Hon. Lois H. Goodman, U.S.M.J.<br><br>Civil Action No.<br>18-cv-17448-FLW-LHG<br><br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff, NJ Spine Society, Inc. ("NJSS" or "Plaintiff"), brings this First Amended Complaint with leave of Court, pursuant to Fed. R. Civ. P. 15(a)(2),[1] against Defendants Marlene Caride, in her Official Capacity as Commissioner of the State of New Jersey Department of Banking and Insurance (the "Commissioner of DOBI"), Gurbir S. Grewal, in his Official Capacity as Attorney General of the State of New Jersey (the "Attorney General"), and Shereef Elnahal, in his Official Capacity as Commissioner of the New Jersey Department of Health (the "Commissioner of Health") (collectively, "Defendants").  In support thereof, NJSS makes the following allegations.

## INTRODUCTION

1.      On June 1, 2018, New Jersey's governor signed Public Law 2018, c. 32, the New Jersey "Out-of-network Consumer Protection, Transparency, Cost Containment and Accountability Act" (the "OON Act") (codified at N.J.S.A. 26:2SS-1 to -20), into law.  The OON Act took effect on or about August 30, 2018. See N.J.S.A. 26:2SS-20. A complete and accurate copy of the OON Act is attached hereto as Exhibit A.

---

[1] The Court's Order granting such leave [ECF Doc. No. 24] directed NJSS to file its Amended Complaint within 30 days thereof, or by April 22, 2020.  [See ECF Doc. No. 24, at 7-8].  By operation of the Court's Standing Order No. 2020-04 and Fed. R. Civ. P. 6(a)(1)(C), this deadline was extended to June 8, 2020.

2.     As described more fully below, the OON Act purports to allow self-funded health insurance plans covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), to "opt in" to the OON Act's claims adjudication and payment provisions.  In doing so, the OON Act effectively allows such plans to "opt out" of the requirements of ERISA.

3.     Thus, the OON Act interferes with the ERISA's policies of ensuring nationally uniform plan administration and a uniform body of federal employee benefits law, and is barred by ERISA's express preemption clause, 29 U.S.C. § 1144(a).

4.     Accordingly, this lawsuit seeks a declaration that ERISA preempts the OON Act insofar as it purports to allow self-funded health insurance plans covered by ERISA to "opt in" to the provisions of the OON Act, and otherwise purports to circumvent the claims adjudication and payment processes for self-funded ERISA plans. To enforce the requested declaratory judgment, Plaintiff also seeks injunctive relief.

5.     ERISA grants plan participants and beneficiaries certain procedural protections when an ERISA plan issues an adverse benefit determination.  As assignees of self-funded ERISA plans, or alternatively, as recipients of powers of attorney to pursue benefit claims on behalf of plan participants and beneficiaries, NJSS's members may avail themselves of these procedural protections including, if

necessary, the right to pursue a civil action under ERISA Section 502, 29 U.S.C. § 1132.

6.     ERISA's preemption clause provides that it supersedes state laws that "relate to" employee benefit plans. 29 U.S.C. § 1144(a). While state laws regulating insurance are saved from preemption, 29 U.S.C. § 1144(b)(2)(A), self-funded employee benefit plans are not deemed insurance companies or otherwise engaged in the business of insurance for purposes of being subject to state law regulation. 29 U.S.C. § 1144(b)(2)(B). Thus, state laws that "relate to" self-funded employee benefit plans, including self-funded employee health plans, are preempted by ERISA.

7.     New Jersey's OON Act relates to self-funded employee benefit plans covered by ERISA in two significant ways. First, it expressly references self-funded ERISA benefits plans and permits such plans to "opt in" to the claims processing and adjudication provisions of the OON Act. Second, for self-funded plans that do not elect to be covered by the OON Act, members or providers may initiate arbitration to determine a final binding amount that the arbitrator determines is reasonable for the medical services at issue, with a "non-binding recommendation" as to the amount the plan should contribute.

8.     In both respects, the OON Act circumvents the claims adjudication and processing procedures of self-funded ERISA plans. Therefore, in both respects, the

- 4 -

OON Act is preempted by ERISA's express preemption clause found at 29 U.S.C. § 1144(a).

9.    Separate and independent of ERISA's express preemption provision, ERISA preempts the OON Act as a matter of conflict preemption because the OON Act thwarts the purposes and objectives of Congress.

10.    Unless the Court grants the relief that Plaintiff seeks, NJSS's members -- most of whom are assigned benefits under self-funded ERISA plans, and/or are granted limited powers of attorney to pursue claims for benefits under self-funded ERISA plans -- will be stripped of their procedural and substantive rights under ERISA.

11.    Specifically, for self-funded plans that opt into the provisions of the OON Act, claims processing and adjudication will be expressly governed by the OON Act rather than under ERISA or the terms of the self-funded plans.

12.    And even for self-funded plans that do not opt into the provisions of the OON Act, claims processing and adjudication under the terms of self-funded ERISA plans can be supplanted by the member arbitration process of the OON Act.

13.    Accordingly, Plaintiff is entitled to a declaration that the OON Act is expressly preempted by 29 U.S.C. § 1144(a), or alternatively, conflicts with Congress's objectives in enacting ERISA and, therefore, is preempted by ERISA, insofar as it purports to allow self-funded ERISA plans to "opt in" to the provisions

of the OON Act, and otherwise purports to circumvent the claims adjudication and payment processes for self-funded ERISA plans.

14.     Plaintiff is further entitled to an injunction enjoining Defendants and their officers, officers, agents, subordinates, and employees from enforcing the OON Act insofar as it purports to allow self-funded health insurance plans covered by ERISA to "opt in" to the provisions of the OON Act, and otherwise purports to circumvent the claims adjudication and payment processes for self-funded ERISA plans.

## THE PARTIES

### I.     New Jersey Spine Society

15.     NJSS is a New Jersey non-profit corporation with its corporate offices located at 156 West State Street, Trenton, NJ  08608.  NJSS is a physician's association whose mission is to protect patient access to high quality spine care in New Jersey.

16.     NJSS's members are New Jersey-based spine surgeons and their practice groups that, for the most part, do not participate in the insurance networks of most commercial insurance carriers.

17.     The members of NJSS routinely treat patients covered by self-funded health insurance plans covered by ERISA. Through assignments of benefits and/or powers of attorney executed by the plans' participants and/or beneficiaries, NJSS's

member physicians acquire legal standing to pursue claims for benefits under self-funded ERISA plans covering the medical treatment that they provide to the plan's members and/or beneficiaries.

18.    NJSS has Article III standing to sue on behalf of its members under the doctrine of associational standing, whereby an association may sue to redress the injuries of its members, even without a showing of injury to the association itself. Neither the claims asserted, nor the relief requested, requires the participation of individual members of NJSS.

19.    The injury to NJSS's members commenced immediately upon the OON Act's effective date.  Most of NJSS's members are out-of-network physicians who either are assigned benefits under self-funded ERISA plans, and/or are granted limited powers of attorney to pursue claims for benefits under self-funded ERISA plans.  Upon the OON Act's effective date, as discussed more fully below, NJSS's members were stripped of their procedural and substantive rights under ERISA.

20.    Moreover, as described more fully in Part V.D below, at least one of NJSS's members has been assigned and/or granted power of attorney rights under self-funded ERISA plans that have opted into the claims arbitration provision of the OON Act.

21.    Further, as also described more fully in Part V.D below, the OON Act's claims arbitration provision has triggered uncertainty as to whether self-funded

ERISA Plans in New Jersey must abide by ERISA's claims adjudication scheme, or whether they could opt out of that scheme in favor of the OON Act's claims arbitration provision.  This uncertainty has caused at least one NJSS member to suffer a concrete harm owing to the fact that New Jersey's largest health insurer has taken upon itself to program its systems to process most, if not all, of this member's claims as if they were subject to the OON Act.

## II.    Defendants

22.    Defendant Marlene Caride is the Commissioner of the State of New Jersey Department of Banking and Insurance ("DOBI"). The Commissioner of DOBI is a citizen of the State of New Jersey and regularly transacts business in person in New Jersey, and she is being sued solely in her official capacity.

23.    Defendant Gurbir S. Grewal is the Attorney General of the State of New Jersey.  The Attorney General is a citizen of the State of New Jersey and regularly transacts business in person in New Jersey, and he is being sued solely in his official capacity.

24.    Defendant Shereef Elnahal is the Commissioner of the New Jersey Department of Health.  The Commissioner of Health is a citizen of the State of New Jersey and regularly transacts business in person in New Jersey, and he is being sued solely in his official capacity.

25.    Defendants, and those subject to their supervision, direction, and/or control, are responsible for the enforcement of the OON Act, including the specific provisions preempted by ERISA.  As such, Defendants are properly subject to suit under <u>Ex Parte Young</u>, 209 U.S. 123 (1908), for purposes of enjoining them, and those acting under their supervision, direction, and/or control, from enforcing the OON Act insofar as it is preempted by federal law.

26.    Specifically, Caride, as DOBI's Commissioner, oversees the disclosures that carriers must provide to patients and the public under the OON Act. <u>N.J.S.A.</u> 26:2SS-6(b)(6) (authorizing Caride to determine the "appropriate and necessary" information that a carrier must provide covered beneficiaries "to ensure that a covered person receives sufficient information necessary to estimate their out-of-pocket cost for an out-of-network service and make a well-informed health care decision"); <u>N.J.S.A.</u> 26:2SS-6(e) (empowering DOBI to prescribe the form of heath insurance identification card that carriers must issue to beneficiaries, including, in the case of Electing Plans, a statement of whether the plan is self-funded and whether the plan elected to be subject to the OON Act); <u>N.J.S.A.</u> 26:2SS-6(f) (authorizing DOBI to determine the manner in which carriers make disclosures in annual regulatory filings).

27.    Moreover, under the OON Act, Electing Plans are required to provide an annual notice to DOBI, and on a form and in a manner DOBI prescribes, attesting

to the Electing Plan's election and agreement to be bound by the OON Act.  N.J.S.A. 26:2SS-9.

28.     Caride also oversees the binding arbitration process for Electing Plans under Section 10 of the OON Act, and the member arbitration process for Non-Electing Plans under Section 11 of the OON Act.  Arbitration under both sections is initiated by filing a request with DOBI.  N.J.S.A. 26:2SS-10(b)(2); N.J.S.A. 26:2SS-11(b)(1).   And DOBI contracts with the provider of arbitration services under Sections 10 and 11. N.J.S.A. 26:2SS-10(b)(3); N.J.S.A. 26:2SS-11(b)(2).

29.     Further, DOBI is required to include detailed information about the OON Act's arbitration process on its website.  N.J.S.A. 26:2SS-12.  DOBI prescribes the form of notice to covered persons of the provisions of the OON Act.  N.J.S.A. 26:2SS-12.  Carriers are required to make the results of their required annual audits available to DOBI.  N.J.S.A. 26:2SS-13.  Caride, as DOBI's commissioner, is empowered to adopt rules and regulations to effectuate the purposes of the OON Act.  N.J.S.A. 26:2SS-18.

30.     Grewal, as New Jersey's Attorney General, oversees the Department of Law and Public Safety, Division of Consumer Affairs ("DCA").  The DCA has several responsibilities under the OON Act, including:

- Specifying the content and design of the mandatory disclosure form by health care professionals relative to participation in health benefits plans, N.J.S.A. 26:2SS-5(g);

- Providing DOBI with information about the OON Act's arbitration process to be included on DOBI's website, N.J.S.A. 26:2SS-12;

- Receiving and investigating complaints against health care providers accused of violating the OON Act, and taking appropriate disciplinary action for violations, N.J.S.A. 26C:2SS-17(b)(3);

- Promulgating regulations to effectuate the purposes of the OON Act, N.J.S.A. 26:2SS-18; and

- Through its licensing boards, taking any anticipatory administrative action in advance of the OON Act, N.J.S.A. 26:2SS-20.

31.    Elnahal, as Commissioner of Health, has the following responsibilities under the OON Act:

- Specifying the content and design of the mandatory disclosure form by health care facilities relative to participation in health benefits plans, N.J.S.A. 26:2SS-4(e);

- Receiving the mandatory annual reports that a health care facility is required to make if it contracts with a carrier to be in-network with respect to health benefit plans, and making that information available to DOBI, N.J.S.A. 26:2SS-7(c), -7(f);

- Providing DOBI with arbitration information that must be included on DOBI's website, N.J.S.A. 26:2SS-12;

- Determining appropriate measures for a health care facility that has not complied with the requirements of the OON Act, N.J.S.A. 26:2SS-17(b);

- Adopting rules and regulations to effectuate the purposes of the OON Act, 26:2SS-18; and

    Taking any anticipatory administrative action in advance of the OON Act, N.J.S.A. 26:2SS-20.

## JURISDICTION AND VENUE

32.     This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332.  This is a civil action seeking to enjoin state action on the grounds that it is preempted by federal law.

33.     Moreover, ERISA provides a private right of action to plan participants and beneficiaries (including their assignees and individuals upon whom participants or beneficiaries have conferred valid powers of attorney, such as Plaintiff's members), inter alia, to enforce their rights under the terms of ERISA plans; to clarify their rights to future benefits under the terms of ERISA plans; to enjoin acts or practices which violate ERISA or the terms of ERISA plans; or to obtain other appropriate equitable relief to redress such violations or enforce any provision of ERISA or the terms of a plan.  29 U.S.C. §§ 1332(a)(1)(B), (a)(3).

34.     Venue in this Court is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1332(e)(2), because this is the District where the violation of ERISA has taken and will continue to take place, and because Defendants reside and/or or may be found in this District.

## FACTUAL ALLEGATIONS

### I.    NJSS and its Members

35.     Health care providers are either "in-network" or "out-of-network" with respect to insurance carriers. "In-network" providers are those who contract with

health insurers that require them to accept discounted negotiated rates as payment in full for covered services.  "Out-of-network" providers are those who do not have contracts with insurance carriers to accept discounted rates.

36.    As noted above, NJSS is composed of New Jersey-based spine surgeons, and their practice groups, with the mission of protecting patient access to high quality spine care in New Jersey.

37.    Because they have not been able to negotiate sustainable in-network rates with most commercial insurance carriers, most of NJSS's members do not participate in the insurance networks of such carriers and, therefore, are considered "out-of-network" providers with respect to such carriers.

38.    Despite their out-of-network status, NJSS's members routinely treat patients covered by self-funded ERISA health plans.

39.    While an out-of-network healthcare provider does not have direct standing to pursue claims for benefits under ERISA plans, they may acquire derivative standing by obtaining assignments of benefits ("AOBs") from plan participants or beneficiaries to pursue such claims.

40.    NJSS's member physicians routinely obtain such AOBs from participants and beneficiaries of self-funded ERISA plans who obtain medical treatment from these physicians.

41.     For example, one of NJSS's members is Atlantic Pediatric Orthopedics PA ("Atlantic Pediatric"), an out-of-network practice composed of pediatric orthopedic specialists located in Edison and Shrewsbury, New Jersey.  Upon registration for treatment at this practice group, Atlantic Pediatric's patients, including those covered by self-funded ERISA plans, routinely execute AOBs that provide, in pertinent part, as follows:

> I authorize Atlantic Pediatric Orthopedics, P.A. and Dr. Stankovits to furnish information concerning my illness and treatment to any insurance company.  I further assign to the physician all payments the insurance carrier are obligated to make on my behalf for medical/surgical services rendered by Dr. Stankovits and this office.

42.     Another of NJSS's members is New Jersey Spinal Medicine and Surgery, P.A. ("NJ Spinal Medicine"), an out-of-network practice specializing in minimally-invasive spine surgery located in Glen Rock and Maywood, New Jersey. Upon registration for treatment at this practice group, its patients, including those covered by self-funded ERISA plans, routinely execute one of two AOBs.

43.     One NJ Spinal Medicine AOB form states, in pertinent part:

ASSIGNMENT OF BENEFITS/DESIGNATED AUTHORIZED REPRESENTATIVE

I hereby assign and convey to the fullest extent permitted by law any and all benefit and non-benefit rights (including the right to any payments) under my health insurance policy or benefit to Dr. Dante Implicito, Dr. John D. Koerner and New Jersey Spinal Medicine and Surgery (collectively, the "Providers") with respect to any and all medical/facility services provided by the Providers to me for all dates of service.  It is specifically intended by this assignment of benefits to

assign to the fullest extent permitted under the law and any and all of my rights, including without limitation, the right of one or more of the Provider to (i) execute, in my name and on my behalf, any form, document or instrument required under any applicable insurance policy or benefit plan to further evidence my intent as set forth herein and to avoid any delay in pursuing rights under applicable Federal and State law rules, regulations and requirements, (ii) pursue penalties for and exclusively on behalf of Providers against any insurance policy or benefit plan for failure of the plan administrator to timely produce or respond to requests (including appeals) for all information relating to any plan documents describing the rights under any insurance policy or benefit plan as required by any applicable Federal or State law, (iii) to endorse for me any checks made payable to me for benefits and claims collected toward my account, and/or (iv) to bring any appeal, lawsuit or administrative proceeding, for and on my behalf, in my name against any person and/or entity involved in the determination of benefits under any insurance policy or benefit plan.

Should this assignment be prohibited under my policy/plan, please disclose to Provider in writing such anti-assignment provision, otherwise this assignment shall be effective notwithstanding any anti-assignment clause in any policy/plan ….

This Assignment of Benefits/Designated Authorized Representative authorization shall remain in full force and effect for all current and future dates of service, until such time that all rights have been exercised under applicable Federal and State law as determined by Providers. I may revoke or withdraw this authority upon written notice to the Providers. In the event of any revocation, I will be responsible for all outstanding amounts then due to the Providers.

44. The other NJ Spinal Medicine AOB form states, in pertinent part:

Assignment of Benefits and Claims

I hereby assign and transfer to NJ Spinal Medicine, all of my rights, title and benefits payable by my insurance carrier and/or benefits plan for services performed by NJ Spinal Medicine.

I hereby authorize NJ Spinal Medicine, to submit claims to my insurance carrier or intermediary for all services rendered by NJ Spinal Medicine, and to exercise any appeals and other rights under my policy or benefits plan on my behalf.

I authorize and assign to NJ Spinal Medicine the right to file suit and to obtain counsel and enter into legal or other actions on my behalf and/or in my name, including arbitration/dispute resolution processes, for any claims against my insurance carrier, PIP carrier, Workers' Compensation carrier, plan administrator, payer or third party.

I authorize NJ Spinal Medicine, to appoint an attorney to represent me directly for the collection of PIP benefits, Workers' Compensation benefits and all other insurance benefits through the carriers themselves, plan administrator, payer or third party. I authorize NJ Spinal Medicine to obtain an attorney to represent me directly in appealing a claim to the appropriate Federal Agency for all federal plans.

I authorize NJ Spinal Medicine to act on my behalf and report any suspected violations of proper claims practices to proper regulatory authorities.

I direct my insurance carrier, or its intermediaries, to issue a payment check directly to NJ Spinal Medicine.

45.     Another of NJSS's members is an out-of-network practice group composed of spine surgeons in Northern New Jersey. This practice group routinely treats patients covered by self-funded ERISA plans. Upon registration for treatment at this practice group, its patients, including those covered by self-funded ERISA plans, routinely execute AOBs that provide, in pertinent part, as follows:

I hereby authorize [the practice group] to furnish to insurance companies, their representatives or designated attorney and requesting physicians, any information concerning my (my dependents) illness and treatments. I hereby assign to [the practice group] all payments for

medical services rendered to myself or my dependents. I agree that if my insurance company sends me a check for services rendered to me or my dependents by [the practice group], I will endorse this check and forward it to [the practice group] within five days.

I hereby further assign to [the practice group] all of my rights under my insurance contract, including all of my rights governed by the statutes and regulations of the Employee Retirement Income Security Act (ERISA), including, without any limitation whatsoever, my rights to "recover benefits" under ERISA Section 502(a)(l)(B), my rights to recover civil statutory penalties under ERISA Section 502(c)(l)(B); and my rights to pursue breach of fiduciary claims under ERISA Sections 502(a)(2) and 502(a)(3).

46.    Alternatively, if assignments are prohibited by the terms of the applicable ERISA plan, and the prohibition on assignment has not been waived and is otherwise enforceable, an out-of-network healthcare provider may acquire derivative standing to pursue claims for benefits under ERISA plans by obtaining limited powers of attorney ("POAs") from plan participants to pursue such claims on the participants' or beneficiaries' behalf.  NJSS's member physicians likewise routinely obtain such POAs from participants and beneficiaries of self-funded ERISA plans who obtain medical treatment from these physicians.

47.    For example, patients (including those covered by self-funded ERISA plans) of one of NJSS's members routinely execute POAs that provide, in pertinent part, as follows:

In considering the amount of medical expenses to be incurred, I, the undersigned, have insurance and/or employee health care benefits coverage with the above captioned, and hereby assign and convey directly to the above named healthcare provider(s), as my designated

Authorized Representative(s), all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from such provider(s), regardless of such provider's managed care network participation status. I understand and agree that I am legally responsible for any and all actual total charges expressly authorized by me regardless of any applicable insurance or benefit payments. I hereby authorize the above named provider(s) to release all medical information necessary to process my claims under HIPAA. I hereby authorize any plan administrator or fiduciary, insurer and my attorney to release to such provider(s) any and all plan documents, insurance policy and/or settlement information upon written request from such provider(s) in order to claim such medical benefits, reimbursement or any applicable remedies. I authorize the use of this signature on all my insurance and/or employee health benefits claim submissions. I hereby convey to the above named provider(s), to the full extent permissible under the law, including but not limited to, any ERISA claim for benefits, breach of ERISA fiduciary duty, and ERISA claim for statutory penalties for failure to produce documents or information in accordance with ERISA §502(a)(l)(B), §502(a)(3) and §502(c)(l)(B), under any applicable employee group health plan(s), insurance policies or public policies, any benefit claim, liability or tort claim, chose in action, appropriate equitable relief, surcharge remedy or other right I may have to such group health plans, health insurance issuers or tortfeasor insurer(s), with respect to any and all medical expenses legally incurred as a result of the medical services I received from the named provider(s), and to the full extent permissible under the law to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies including, but not limited to, (I) obtaining information about the claim to the same extent as the assignor; (2) submitting evidence; (3) making statements about facts or law; (4) making any request, or giving, or receiving any notice about appeal proceedings; and (5) any administrative and judicial actions by such provider(s) to pursue such claim, chose in action or right against any liable party or employee group health plan(s), including, if necessary, bring suit by such provider(s) against any such liable party or employee group health plan in my name with derivative standing but at such provider(s) expenses….

48.     Members of self-funded ERISA plans represent approximately 70% of patients in New Jersey covered by commercially-insured plans.   Accordingly, NJSS's members will inevitably continue to provide medical treatment to patients covered by self-funded ERISA plans and, through AOBs or, alternatively, POAs, and will continue to acquire standing to pursue claims for benefits under such plans.

## II.     Claims Processing and Adjudication under ERISA

### A.     Procedural Requirements for Adverse Benefit Determinations

49.     ERISA grants plan participants and beneficiaries certain procedural protections when an ERISA plan issues an "adverse benefit determination" ("ABD").  An ABD is "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit" under an ERISA plan.   29 C.F.R. § 2560.503-1(m)(4).

50.     Specifically, upon issuing an ABD, the plan must provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim. 29 U.S.C. § 1133.

51.    ERISA regulations expand on these requirements, further requiring that when an administrator of an ERISA plan issues an ABD, it must provide written notification, "in a manner calculated to be understood" by the recipient, of the following:  (i) the specific reason(s) for the adverse determination; (ii) reference to the specific plan provisions on which the determination is based; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material is necessary; (iv) a description of the plan's review procedures and the time limits applicable to such procedures, including notice that the claimant has a right to bring a claim under ERISA to challenge the decision; and (v) any internal rule, guideline, protocol, or other similar criterion [that] was relied upon in making the adverse determination.  29 C.F.R. § 2560-503.1(g)(1)(i)-(v).

52.    These procedural requirements are baseline procedural protections which ensure that when a claimant seeks to challenge an ABD, the claimant has fair notice of the reasons for the ABD and a fair opportunity to respond to those issues. These protections are also important because they may permit the resolution of claims without the need for judicial intervention.

53.    Equally importantly, after exhausting available administrative remedies under an ERISA plan, a participant or beneficiary has the right to commence a civil action under ERISA Section 502, 29 U.S.C. § 1132.

- 20 -

54.     Having acquired standing to pursue claims under ERISA plans through AOBs and/or POAs, NJSS's members may avail themselves of these important procedural protections including, if necessary, the right to pursue a civil action under ERISA Section 502.

**B.     Claims for Benefits under ERISA Plans**

55.     Under ERISA Section 502(a)(1)(B), a participant or beneficiary of an ERISA plan, or his or her assignee, may bring a cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  As this statutory language makes clear, claims for benefits under ERISA plans are based on "the terms of the plan."  Id.

**C.     Cost Sharing Obligations for Emergency Services**

56.     Moreover, the Patient Protection and Affordable Care Act ("ACA") added Section 2719A to the Public Health Services Act ("PHS Act"), 42 U.S.C. § 300gg-19a.  Section 2719A requires any group health plan, or health insurer that provides or covers benefits with respect to services in an emergency department of a hospital, to cover any emergency services without the need for prior authorization; without regard to the provider's status as an in-network or out-of-network provider; and in a manner that ensures that the patient's cost-sharing requirement (expressed as a copayment amount or coinsurance rate) is the same requirement that would

apply if such services were provided in-network.  42 U.S.C. § 300gg-19a(b)(1). Section 2719A's requirements are expressly incorporated into group health plans covered by ERISA.  See 29 U.S.C. § 1185d(a) (providing that certain provisions of the PHS Act, including Section 2719A, "shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart").[2]

57.     Regulations under Section 2719A provide that, to satisfy Section 2719A's cost-sharing obligations, a plan that is not grandfathered under the ACA must pay benefits for out-of-network emergency services in the amount equal to the greatest of the following three possible amounts:  (1) the amount negotiated with in-network providers for the emergency service furnished, taking into account the in-network co-payment and co-insurance obligations; (2) the amount for the emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services (such as the usual, customary and reasonable charges), but substituting the in-network cost-sharing provisions for the out-of-network cost-sharing provisions; or (3) the amount that would be paid under

---

[2] These requirements do not apply to "grandfathered plans" under the ACA.  A plan is grandfathered if it was in existence as of March 23, 2010, and did not undergo certain changes to lose grandfathered status after that date.  See 42 U.S.C. § 18011.

Medicare for the emergency service, taking into account the in-network co-payment and co-insurance obligations.  29 CFR § 2590.715-2719A(b)(3)(i)(A)-(C).

58.    NJSS's members routinely provide emergency services to their patients, including emergency spine surgeries.  Thus, when these patients are covered by non-grandfathered ERISA plans, the plans must reimburse NJSS's members for these emergency services in accordance with the regulations issued under Section 2719A.

## III.    ERISA Preemption

59.    To ensure nationally uniform plan administration and a uniform body of federal employee benefits law, ERISA contains a preemption clause that broadly provides that it "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).

60.    ERISA's "savings clause" exempts from preemption state laws that regulate insurance, banking, or securities.  29 U.S.C. § 1144(b)(2)(B).

61.    However, ERISA's "deemer clause" qualifies the savings clause by barring States from deeming self-funded employee benefit plans "to be an insurance company or other insurer ... or to be engaged in the business of insurance."  Id.  Thus, the "deemer clause" relieves such self-funded plans from state laws purporting to regulate insurance.  See FMC Corp. v. Holliday, 498 U.S. 52, 61 (1990).

62.    As a consequence, state laws that purport to regulate self-funded employee health plans are preempted by ERISA.

63.    Importantly, ERISA's preemption clause is "deliberately expansive." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46 (1987).  The Supreme Court has set forth two categories of state laws that the clause preempts:  those that have a "reference to" a covered employee benefit plan under ERISA, and those have a "connection with" such a plan.  Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936, 943 (2016).

64.    A state law has a prohibited "reference to" an ERISA plan where it "acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation."  Gobeille, 136 S. Ct. at 943.

65.    Among the types of state laws that the Supreme Court has found to contain the prohibited "reference" to an ERISA plan are those that (i) specifically reference ERISA-covered programs, (ii) specifically exempt ERISA plans from an otherwise generally applicable statute, or (iii) premise a common law cause of action on the existence of an ERISA plan.  California Div. of Labor Standards Enforcement v. Dillingham Constr., NA, Inc., 519 US 316, 324-25 (1997).

66.    A state law has a prohibited "connection to" an ERISA plan where it "governs ... a central matter of plan administration" or "interferes with nationally

uniform plan administration." Gobeille, 136 S. Ct. at 943 (citations and internal quotation marks omitted).

67.    Obligations associated with plan administration include "determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 9 (1987).

68.    A state law "also might have an impermissible connection with ERISA plans if 'acute, albeit indirect, economic effects' of the state law 'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'" Gobeille, 136 S. Ct. at 943 (citations and internal quotation marks omitted).

## IV.    New Jersey's OON Act and its Attempts to Regulate Claims Processing and Adjudication under Self-Funded ERISA Plans

### A.    General Provisions

69.    The OON Act, among other things, imposes certain disclosure requirements on health care providers and health insurance carriers; places limitations on charges recoverable by out-of-network providers in certain situations; and establishes a binding arbitration system for certain emergency and out-of-network billing disputes between providers and carriers. See generally N.J.S.A. 26:2SS-1 to -20.

- 25 -

70.    In all of these areas, the OON Act makes repeated references to "self-funded health benefits plans" or "self-funded plans."  N.J.S.A. 26:2SS-3, -4(d), -6(e), -7(e), -8(c), -9(a), -9(b)(2), -9(d), -10(f), -11.  The OON Act expressly defines a "self-funded plan" as a "self-insured health benefits plan governed by the provisions of the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. s.1001 et seq."  N.J.S.A. 26:2SS-3.

71.    For example, among the disclosures that health care facilities are required to make to covered persons, prior to scheduling an appointment for non-emergency services, is a disclosure that states:

> that if the covered person's coverage is provided through an entity providing or administering a self-funded health benefits plan that does not elect to be subject to the provisions of section 9 of this act, that:
>
> (i)  certain health care services may be provided on an out-of-network basis, including those services associated with the health care facility;
>
> (ii)  the covered person may have a financial responsibility applicable to health care services provided by an out-of-network provider, in excess of the covered person's copayment, deductible, or coinsurance, and the covered person may be responsible for any costs in excess of those allowed by the person's self-funded health benefits plan; and
>
> (iii) the covered person should contact the covered person's self-funded health benefits plan sponsor for further consultation on those costs.

N.J.S.A. 26:2SS-4(d).

72.    The OON Act defines "carrier" as

an entity that contracts or offers to contract to provide, deliver, arrange for, pay for, or reimburse any of the costs of health care services under

a health benefits plan, including: an insurance company authorized to issue health benefits plans; a health maintenance organization; a health, hospital, or medical service corporation; a multiple employer welfare arrangement; the State Health Benefits Program and the School Employees' Health Benefits Program; or any other entity providing a health benefits plan.

N.J.S.A. 26:2SS-3.

73.    Although the OON Act purports to exclude "any other entity providing or administering a self-funded health benefits plan" from the default definition of "carrier," it only does so "[e]xcept as provided under the provisions of this act." Id.

74.    Thus, the OON Act purports to treat self-funded ERISA plans as if they were insurance companies or other insurers, even though, as noted above, ERISA's "deemer clause" prohibits States from deeming self-funded employee benefit plans "to be an insurance company or other insurer ... or to be engaged in the business of insurance." 29 U.S.C. § 1144(b)(2)(B).

75.    Moreover, the OON Act expressly authorizes self-funded ERISA plans to opt into the provisions of Section 9 of the law. N.J.S.A. 26:2SS-6(e), -7(e), -8(c), 9(b)(2), -9(d), -10(f).  As discussed more fully in Part IV.B, below, a self-funded ERISA plan that opts into Section 9 (an "Electing Plan") becomes subject to, and benefits from, that section's claims processing and adjudication provisions.

76.    The OON Act requires an Electing Plan to "provide notice, on an annual basis, to the department, on a form and in a manner prescribed by the department, attesting to the plan's participation and agreeing to be bound by the provisions of

this section." <u>N.J.S.A.</u> 26:2SS-9(d).  In that situation, the Electing Plan "shall amend the employee benefit plan, coverage policies, contracts and any other plan documents to reflect that the benefits of this section shall apply to the plan's members." <u>Id.</u>

77.    Further, the OON Act directs any Electing Plan to issue a health insurance identification card in a form and manner to be prescribed by the New Jersey Department of Banking and Insurance that indicates "whether the plan is self-funded and whether the plan elected to be subject to this act." <u>N.J.S.A.</u> 26:2SS-6(e).

78.    In apparent recognition of the fact that the OON Act might be subject to a preemption challenge, the OON Act provides that "[t]he provisions of this act shall be severable, and if any provision of this act shall be held invalid, or held invalid with respect to any particular health benefits plan or carrier, such invalidity shall not affect the other provisions hereof, or application of those provisions to other health benefits plans or carriers." <u>N.J.S.A.</u> 26:2SS-19.

**B.    Claims Processing and Adjudication for Electing Plans**

79.    Section 9 of the OON Act, which specifically applies to Electing Plans, governs the amounts recoverable by a health care provider in the event of either of two situations:  (i) treatment on an emergency or urgent basis, or (ii) "inadvertent" out-of-network situations (such as when a patient utilizes an in-network health care

facility for covered health care services and, for any reason, in-network health care services are unavailable). <u>See</u> <u>N.J.S.A.</u> 26:2SS-9(a), -9(b), -9(c).

80.     In the situations covered by Section 9, the carrier (including any Electing Plan) must ensure that the covered person incurs no greater out-of-pocket costs than he or she would have incurred with an in-network provider. The out-of-network health care provider is prohibited from billing the covered person except for applicable deductibles, copayments, or coinsurance amounts that would apply if the covered person had utilized an in-network provider. <u>N.J.S.A.</u> 26:2SS-9(a).

81.     In addition, in the situations covered by Section 9, the out-of-network provider may bill the carrier for the medical services rendered. The carrier (including any Electing Plan) can either pay the billed amount or "determine within 20 days from the date of the receipt of the claim for the services whether the carrier considers the claim to be excessive," and if so, inform the provider within 20 days of receipt of the claim. <u>N.J.S.A.</u> 26:2SS-9(c).

82.     In the event of disputes over amounts paid under Section 9, the OON Act requires the carrier (including any Electing Plan) and health care provider to attempt to negotiate a resolution within 30 days. <u>N.J.S.A.</u> 26:2SS-9(c).

83.     If attempts to negotiate are unsuccessful, the provider or carrier (including any Electing Plan) may initiate binding arbitration to determine payment for the services if the amount in dispute is $1,000 or greater. <u>N.J.S.A.</u> 26:2SS-9(c),

-10(a).  The arbitrator's decision is one of the two amounts submitted by the parties as their final offers and shall be binding on both parties.  N.J.S.A. 26:2SS-10(b)(5).

      **C.**     **Member Arbitration for Non-Electing Plans**

84.     The OON Act also purports to regulate claims adjudication under any self-funded plan that has not elected to be subject to Section 9 of the OON Act (a "Non-Electing Plan"), by providing, in Section 11, for arbitration directly between a member of a Non-Electing Plan and an out-of-network provider in the event of a dispute over the out-of-network provider's billed charges.  N.J.S.A. 26:2SS-11.

85.     The member arbitration provision under Section 11 of the OON Act requires the Non-Electing Plan member and out-of-network health care provider to attempt to negotiate a resolution within 30 days.  N.J.S.A. 26:2SS-11(a).

86.     If such attempts to negotiate reimbursement are unsuccessful, the Non-Electing Plan member or out-of-network health care provider may initiate binding arbitration to determine payment for the services.  Id.

87.     Unless negotiations for reimbursement result in an agreement between the provider and the Non-Electing Plan member within the 30 days, a provider shall not collect or attempt to collect reimbursement, including initiation of any collection proceedings, until the provider files a request for arbitration.  Id.

88.     The arbitrator's decision shall include written findings, including a final binding amount that the arbitrator determines is reasonable for the service, which

- 30 -

shall include a non-binding recommendation to the Non-Electing Plan of an amount that would be reasonable for the entity to contribute to payment for the service. N.J.S.A. 26:2SS-11(b)(4).

### D.     The OON Act's Circumvention of ERISA Claims Processing and Adjudication

89.     The OON Act represents a significant departure from claims processing and adjudication under ERISA.

90.     Among other things, as described more fully in Part II.A above, participants and beneficiaries of ERISA plans, including their assignees, are accorded significant procedural protections when an ERISA plan issues an ABD, including a reduction or failure to provide or make payment (in whole or in part) for a benefit under an ERISA plan.  See 29 C.F.R. § 2560.503-1(m)(4).  Upon issuing an ABD, an ERISA plan must issue a notice meeting a number of statutory and regulatory requirements, including a detailed explanation of the reasons for the ABD and the right to plan and judicial review.  See 29 U.S.C. § 1133; 29 C.F.R. § 2560-503.1(g)(1)(i)-(v).

91.     The OON Act purports to authorize an Electing Plan to circumvent these procedural requirements, and replace them with the OON Act's binding arbitration provisions, upon the Electing Plan's determination and notice to the health care provider that the Electing Plan "considers the claim to be excessive." N.J.S.A. 26:2SS-9(c).

92.    Moreover, as described more fully in Part II.B, above, claims for benefits under ERISA plans arise "under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).   And in the case of emergency services, as described more fully in Part II.C, above, Section 2719A of the PHS Act and its implementing regulations, which are incorporated into ERISA, require non-grandfathered ERISA plans to pay benefits for out-of-network emergency services in the amount equal to the greatest of the following three possible amounts:  (1) the amount negotiated with in-network providers for the emergency service furnished, taking into account the in-network co-payment and co-insurance obligations; (2) the amount for the emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services; or (3) the amount that would be paid under Medicare for the emergency service, taking into account the in-network co-payment and co-insurance obligations.  29 CFR § 2590.715-2719A(b)(3)(i)(A)-(C).

93.    Under the OON Act, an Electing Plan would be able to avoid the requirements of the plan or the cost-sharing requirements under Section 2719A of the PHS Act these requirements by initiating arbitration with an out-of-network health care provider.  In lieu of requiring an Electing Plan to pay benefits in accordance with the "terms of the plan" as required by 29 U.S.C. § 1132(a)(1)(B), or, in the case of emergency services, the greatest of the three amounts specified in 29 CFR § 2590.715-2719A(b)(3)(i), the arbitrator would instead select one of the

two amounts submitted by the parties as their final offers as the amount an Electing Plan would be required to pay.  <u>N.J.S.A.</u> 26:2SS-10(b)(5).

94.    Even for Non-Electing Plans, the OON Act conflicts with claims processing and adjudication under ERISA.  Section 11 of the OON Act establishes a member arbitration process for determining a Non-Electing Plan member's responsibility for payment of out-of-network medical services, which is based on a "final binding amount that the arbitrator determines is reasonable for the service," along with a "non-binding recommendation" to the Non-Electing Plan as to the amount the plan should contribute for the services.  <u>N.J.S.A.</u> 26:2SS-11(b)(4).

95.    However, as noted more fully in Part II.B and II.C, above, the terms of the plan govern member cost sharing obligations generally, and Section 2719A of the PHS Act and its implementing regulations govern member cost sharing for emergency services covered by ERISA plans.

## V.    A Justiciable Controversy Now Exists between NJSS and Defendants

### A.    Generally

96.    An actual justiciable controversy exists between NJSS and Defendants. Since the effective date of the OON Act, NJSS's members have been stripped of their procedural and substantive rights under ERISA.  Self-funded ERISA plans are now permitted to opt into Section 9 of the OON Act, thereby bypassing ERISA's procedural requirements for adverse benefits determinations, and the cost-sharing

obligations imposed on these plans by virtue of Section 2719A of the PHS Act and its implementing regulations.

97.    Moreover, even for self-funded plans that do not opt into Section 9, the member arbitration provision of Section 11 applicable to such plans conflicts with the cost-sharing rules under Section 2719A of the PHS Act and its implementing regulations.

**B.    DOBI Issues a Bulletin Announcing its Intention to Enforce the OON Act as Written**

98.    On November 20, 2018, the Commissioner of DOBI issued Bulletin No. 18-14, entitled "Implementation of P.L. 2018, c. 32 (N.J.S.A. 26:2SS-1 to -20), Out-of-Network Consumer Protection, Transparency, Cost Containment and Accountability Act" ("Bulletin").  A complete and accurate copy of this Bulletin is attached hereto as Exhibit B.

99.    In the Bulletin, DOBI purports to "provide guidance to carriers, health care providers, and other interested parties to help those entities meet their obligations under the [OON Act], pending the adoption of rules."  (Bulletin, p. 1).  DOBI also states that it anticipates proposing such rules in the near future.  (Id.).

100.    Among other things, the Bulletin describes the OON Act's arbitration process to resolve billing disputes for "inadvertent and/or involuntary out-of-network services."  (Bulletin, pp. 3, 8-13).  The Bulletin explains that "[t]he claims processing and binding arbitration sections of the [OON Act] may also apply to self-

- 34 -

funded health benefits plans that elect to be subject to the claims processing and arbitration provisions of the Act and that cover New Jersey residents." (Bulletin, p. 2). The Bulletin reiterates that "a self-funded plan may opt to be subject to the claims processing and arbitration provisions, as provided herein, and be subject to the same arbitration process as carriers in the insured markets." (Bulletin, pp. 3-4) (citing N.J.S.A. 26:2SS-9(d)).

101.   For self-funded plans that opt into the OON Act's arbitration provisions, the Bulletin requires that the health plan identification card contain the words, "SELF-FUNDED," in upper-case text on the front of the card, and contain "[t]ext indicating that the self-funded health benefits plan has elected to participate in the OON Arbitration, pursuant to N.J.S.A. 26:2SS-9 and -10." (Bulletin, p. 15).

102.   The Bulletin also explains that, "[i]n the case of a self-funded plan, which does not elect to be subject to the claims processing and arbitration provisions of the Act, a covered person under that plan or an out-of-network health care provider may initiate arbitration." (Bulletin p. 4).  The Bulletin states that under that process, "the arbitrator will choose a final amount that the arbitrator determines is reasonable, which is binding on the covered person and the out-of-network healthcare provider but not on the self-funded health benefits plan that did not opt-in to arbitration." (Bulletin, p. 4) (citing N.J.S.A. 26:2SS-16).

103.    Thus, the Bulletin provides every indication that the Commissioner of DOBI and those subject to her supervision, direction, and/or control, intend to enforce the OON Act as written, without regard to its impact on claims processing and adjudication under self-funded ERISA plans.

### C.    New Jersey's Largest Health Insurer Encourages Self-Funded Plans to Opt into Section 9 of the OON Act

104.    Upon information and belief, on or around August 14, 2018, Horizon Healthcare Services, Inc., d/b/a Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), New Jersey's largest health insurer, sent letters relating to the OON Act to the sponsors of the self-funded ERISA plans for which Horizon acts as third-party administrator.  In these letters, Horizon summarizes the arbitration provisions available to Electing Plans and members of Non-Electing Plans, and asks the plan sponsors to complete a form advising Horizon as to whether the plan intends to opt into the OON Act.

105.    Horizon's letters to the self-funded plans they administer encourage the self-funded ERISA plans they administer to opt into the OON Act by stating:

> If your group health plan currently opts in to mandates requiring reimbursement up to billed charges for certain surprise out-of-network services (e.g., the Emergency Room mandate), and if your group health plan chooses to opt in to this mandate, your group health plan will be able to leverage the negotiation and arbitration process under the Act, rather than reimbursing out-of-network providers up to billed charges.

106.    Horizon's letters add that, even if plans do not opt in:

employees covered under your group health plan may still use the binding arbitration process available for surprise out-of-network claims. The arbitration will be between the out-of-network provider and the covered employee and be non-binding on your group.

**D.    Application of the OON Act to Self-Funded ERISA Plans Has Harmed NJSS's Members**

107.   As noted above, immediately upon enactment of the OON Act, NJSS's members were stripped of their procedural and substantive rights under ERISA.

108.   Moreover, since the law has taken effect, the application of the OON Act to self-funded ERISA Plans has caused additional injuries to some of NJSS's members.

**1.    Atlantic Pediatric**

109.   By way of example, since the OON Act's passage, one of NJSS's members, Atlantic Pediatric, has received assignments of benefits under at least two self-funded ERISA plans that have opted into Section 9 of the OON Act.  In both cases, the patients received emergency treatment from an Atlantic Pediatric physician in a hospital setting.

110.   In both cases, Horizon was the third-party administrator of the self-funded ERISA Plans that covered the patients.  Horizon's initial reimbursement amounts to Atlantic Pediatric in both cases was a fraction of the practice's billed charges, and, upon information and belief, a fraction of the reimbursement amount required under the Plans and under 29 CFR § 2590.715-2719A(b)(3)(i).

111.   In both cases, Atlantic Pediatric attempted to appeal the underpayment with Horizon but Horizon refused, stating that the Plans covering the patients were self-funded ERISA Plan that opted into Section 9 of the OON Act.

112.   As a consequence, Atlantic Pediatric was forced into the OON Act's claims arbitration process, and in both cases, the arbitrator upheld Horizon's underpayments as final under the OON Act.

### 2.    NJ Spinal Medicine

113.   Further, as discussed more fully above, Horizon has actively encouraged the self-funded ERISA Plans it administers to opt into the OON Act. Upon information and belief, in anticipation of large numbers of the self-funded Plans it administers opting into the OON Act (as Horizon has encouraged), Horizon has programmed its system to automatically apply the OON Act's requirements to most, if not all, of NJ Spinal Medicine's claims.  It has done so without regard to whether the claims are even subject to the OON Act, and without regard to whether the plans at issue have opted into the requirements of the OON Act.

114.   As noted above, members of self-funded ERISA plans represent approximately 70% of patients covered by commercially-insured health insurance plans in New Jersey.  Accordingly, but for the fact that the OON Act allows self-funded ERISA Plans to opt into the claims arbitration provision of Section 9, Horizon would have had no reason to expect that the OON Act would apply to the

vast majority of NJ Spinal Medicine's health care reimbursement claims it processed and, therefore, no reason to program its system to automatically apply the OON Act to most if not all of NJ Spinal Medicine's claims.

115.   Horizon's improper application of the OON Act NJ Spinal Medicine's claims has significantly delayed reimbursements to NJ Spinal Medicine, and it has required NJ Spinal Medicine to expend limited administrative resources in order to pursue amounts that are already due and owing to this practice.

116.  Horizon's improper application of the OON Act to NJ Spinal Medicine's claims has also created uncertainty as to whether self-funded ERISA Plans in New Jersey who have received treatment at NJ Spinal Medicine must abide by ERISA's claims adjudication scheme.  This uncertainty will continue for so long as self-funded ERISA Plans are permitted to opt into the OON Act.[3]

---

[3] NJ Spinal Medicine has separately challenged Horizon's improper application of the OON Act, and DOBI's refusal to investigate and remediate same, in the matter, New Jersey Spinal Medicine and Surgery, P.A. v. State of New Jersey, Department of Banking and Insurance, Docket No. A-000823-19 (N.J. Super. Ct., App. Div.), currently pending in the Superior Court of New Jersey, Appellate Division, and consolidated with Garden State Bariatric & Wellness Center, LLC v. State of New Jersey, Department of Banking and Insurance, Docket No. A-000631-19, and Advanced Gynecology and Laparoscopy, P.C. v. State of New Jersey, Department of Banking and Insurance, Docket No. A-001216-19 (collectively, the "Appellate Division Matters").  However, even if the Appellate Division Matters are resolved in NJ Spinal Medicine's favor, the uncertainty caused by Horizon's conduct will continue if self-funded ERISA Plans remain able to opt into the OON Act.

## COUNT ONE

### (Declaratory and Injunctive Relief based on Express ERISA Preemption)

117.   NJSS repeats and incorporates by reference its allegations contained in each of the preceding paragraphs as if fully set forth herein.

118.   ERISA Section 502(a)(1)(B) authorizes a plan participant or beneficiary to bring a civil action, inter alia, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

119.   Moreover, ERISA Section 502(a)(3) authorizes a plan participant, beneficiary, or fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

120.   Pursuant to ERISA Section 502(a)(1)(B), NJSS is entitled to a judgment enforcing or clarifying its members' rights to benefits under the terms of the self-funded ERISA plans that have been validly assigned to them through AOBs executed by the plans' participants and/or beneficiaries, or for which the plans' participants and/or beneficiaries have granted POAs to NJSS's members.

- 40 -

121.   Alternatively, pursuant to ERISA Section 502(a)(3), NJSS is entitled to a judgment:  (a) enjoining acts or practices that violate ERISA or the terms of the self-funded ERISA plans that have been validly assigned to NJSS's members through AOBs executed by the plans' participants and/or beneficiaries, or for which the plans' participants and/or beneficiaries have granted POAs to NJSS's members; and/or (b) granting other appropriate equitable relief to redress such violations or enforce the provisions of ERISA and the applicable self-funded plans.

122.   As noted above, Section 514 expressly preempts state laws that have a "reference to" or "connection with" a covered employee benefit plan under ERISA. Gobeille, 136 S. Ct. at 943.  The OON Act has both.

123.   The OON Act has a prohibited "reference to" covered ERISA plans in that it makes repeated references to "self-funded health benefits plans" or "self-funded plans," which the OON Act defines to mean self-insured health benefit plans governed by ERISA.

124.   Moreover, throughout the law, numerous requirements are explicitly imposed depending on whether a particular self-funded plan has or has not opted into the provisions of its terms.  These include:

- a specific disclosure requirement imposed on health care providers "if the covered person's coverage is provided through an entity providing or administering a self-funded health benefits plan that does not elect to be subject to the provisions of section 9 of this act," N.J.S.A. 26:2SS-4(d);

- a requirement that self-funded health benefits plans that elect to be subject to the OON Act issue a health insurance identification card in a specific form and manner prescribed by New Jersey's Department of Banking and Insurance, N.J.S.A. 26:2SS-6(e);

- a requirement that self-funded health benefit plans that opt into the law must ensure that the covered person incurs no greater out-of-pocket costs than he or she would have incurred with an in-network provider, and the health care provider is prohibited from billing the covered person except for applicable deductibles, copayments, or coinsurance amounts that would apply if the covered person had utilized an in-network provider, N.J.S.A. 26:2SS-9(a);

- an exception to this general provision for "services provided to a member of a self-funded plan that does not elect to be subject to the provisions of this section," for which the provider may balance bill the covered person in excess of the applicable in-network deductible, copayment, or coinsurance amounts, N.J.S.A. 26:2SS-9(a);

- specific and detailed requirements imposed on self-funded plans that elect coverage under the law, including an annual notice in a form prescribed by New Jersey's Department of Banking and Insurance, N.J.S.A. 26:2SS-9(a), -9(c), -9(d);

- a duty on self-funded plans that have opted into the law to amend their plans, coverage policies, contracts, and any other plan documents in conformity with the requirements of the OON Act, N.J.S.A. 26:2SS-9(d);

- a duty on self-funded plans that have opted into the provisions of the law to participate in binding arbitration, N.J.S.A. 26:2SS-9(c); and

- a separate arbitration procedure applicable to members who participate in plans that have not opted into the provisions of the law, N.J.S.A. 26:2SS-11.

125.    Given these and other provisions, the OON Act acts "immediately and exclusively upon ERISA plans" that have elected to be covered under the law.  Cf. Gobeille, 136 S. Ct. at 943.

126.  The existence of an ERISA plan is likewise "essential to the law's operation," in that whether various provisions of the OON Act apply depend upon whether a particular self-funded ERISA plan opts into the law.  Cf. id.  Thus, the OON Act has a prohibited "reference to" an ERISA plan and, for that reason alone, is preempted by ERISA.

127.  The OON Act also has a prohibited "connection with" ERISA plans, because it purports to regulate claims processing and adjudication, which are core matters of plan administration under ERISA.

128.  The OON Act purports to regulate claims processing and adjudication under self-funded ERISA plans by, among other things:

- regulating the amount and manner in which Electing Plans pay out-of-network providers for "inadvertent" or emergent or urgent care treatment, N.J.S.A. 26:2SS-9(a), -9(b);

- specifying the procedures that Electing Plans must follow in the event of disputes with insurance carriers relating to reimbursements, including a mandatory arbitration provision; N.J.S.A. 26:2SS-9(c), -10; and

- allowing for member arbitration for determining a Non-Electing Plan member's responsibility for payment of out-of-network medical services, which is based on a "final binding amount that the arbitrator determines is reasonable for the service," along with a "non-binding recommendation" to the Non-Electing Plan

as to the amount the plan should contribute for the services. <u>N.J.S.A.</u> 26:2SS-11(b)(4).

129.   It is of no consequence to the preemption analysis that Section 9 only applies to Electing Plans.  ERISA provides an elaborate set of rules designed to promote the interests of employees and their beneficiaries in employee benefit plans. Allowing parties to opt out of ERISA preemption would interfere with nationally uniform plan administration and enable plan sponsors to avoid compliance with ERISA's regulatory structure.

130.   Indeed, as noted above, the OON Act purports to allow Electing Plans to circumvent ERISA's procedural requirements for adverse benefit determinations and the plans' cost-sharing obligations for emergency services.

131.   Moreover, by making such a choice available to self-insured plans throughout New Jersey, the OON Act will inevitably create market incentives for insurers offering plan administration services to steer its self-funded plan clients to elect coverage under the law.  In fact, in Horizon's August 14, 2018, letter to the sponsors of the ERISA plans for which it serves as third-party administrator, Horizon encourages these plans to elect coverage under the law.

132.   Absent the requested declaratory and injunctive relief, NJSS and its members will suffer and continue to suffer irreparable harm as the result of the violations of their rights under ERISA and the self-funded ERISA plans that have been validly assigned to them through AOBs executed by the plans' participants

and/or beneficiaries, or for which the plans' participants and/or beneficiaries have granted POAs to NJSS's members.  NJSS and its members have no adequate legal remedy at law available against Defendants for the injuries and irreparable harm they will suffer.

## <u>COUNT TWO</u>

### (Declaratory and Injunctive Relief based on Conflict Preemption)

133.   NJSS repeats and incorporates by reference its allegations contained in each of the preceding paragraphs as if fully set forth herein.

134.   The OON Act directly conflicts with ERISA by, among other things:

- purporting to authorize an Electing Plan to circumvent ERISA's procedural requirements upon issuing an ABD, and replace them with the OON Act's arbitration provisions, <u>N.J.S.A.</u> 26:2SS-9(c);

- purporting to enable an Electing Plan to avoid its cost-sharing obligations under Section 2719A of the PHS Act and its implementing regulations, which are incorporated into ERISA, by initiating arbitration with an out-of-network health care provider furnishing emergency services, <u>N.J.S.A.</u> 26:2SS-10(b)(5); and

- establishing a member arbitration process for Non-Electing Plans that would likewise circumvent the procedures under Section 2719A for determining member cost-sharing, <u>see</u> <u>N.J.S.A.</u> 26:2SS-11(b)(4).

135.   Absent the requested declaratory and injunctive relief, NJSS and its members will suffer irreparable harm as the result of the conflicts between the OON Act and Congress's objectives in enacting ERISA, which violate NJSS's members'

rights under ERISA.  NJSS and its members have no adequate legal remedy at law available against Defendants for the injuries and irreparable harm they will suffer.

## PRAYER FOR RELIEF

WHEREFORE, NJSS demands judgment in its favor against Defendants as follows:

A.    Declaring that the OON Act is expressly preempted by 29 U.S.C. § 1144, insofar as it purports to allow self-funded ERISA plans to "opt in" to the provisions of the OON Act, and otherwise purports to circumvent the claims adjudication and payment processes for self-funded ERISA plans.

B.    Declaring that the OON Act conflicts with Congress's objectives in enacting ERISA and, therefore, is preempted by ERISA insofar as it purports to allow self-funded ERISA plans to "opt in" to the provisions of the OON Act, and otherwise purports to circumvent the claims adjudication and payment processes for self-funded ERISA plans.

C.    Enjoining Defendants and their officers, agents, subordinates, and employees from enforcing the OON Act insofar as it purports to allow self-funded ERISA plans to "opt in" to the provisions of the OON Act, and otherwise purports to circumvent the claims adjudication and payment processes for self-funded ERISA plans.

D.      Awarding such further declaratory, injunctive, or other relief as may be

deemed appropriate.

Respectfully submitted,

**K&L GATES LLP**

One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*The New Jersey Spine Society*


By:  /s/ Anthony P. La Rocco
   Anthony P. La Rocco

Dated:  June 5, 2020

## <u>CERTIFICATION UNDER L. CIV. R. 11.2</u>

I certify that, with the exception of the Appellate Division Matters referenced in Paragraph 116, footnote 3 above, the matter in controversy is not the subject matter of any other action pending in any court or of any pending arbitration or administrative proceeding.

Respectfully submitted,

**K&L GATES LLP**

One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*The New Jersey Spine Society*


By:  /s/ Anthony P. La Rocco
  Anthony P. La Rocco


Dated:  June 5, 2020

## <u>LOCAL RULE 201.1 CERTIFICATION</u>

I certify under penalty of perjury that the matter in controversy is not eligible for compulsory arbitration because it is based on an alleged violation of a right secured by the Constitution of the United States.

Respectfully submitted,

**K&L GATES LLP**

One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*The New Jersey Spine Society*


By:  /s/ Anthony P. La Rocco
  Anthony P. La Rocco

Dated:  June 5, 2020

## <u>CERTIFICATION OF SERVICE</u>

I certify under penalty of perjury that on this date, I caused the within First

Amended Complaint for Declaratory and Injunctive Relief to be served on all

counsel of record via electronic filing via the Court's ECF filing system.

Respectfully submitted,

**K&L GATES LLP**

One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*The New Jersey Spine Society*


By:  /s/ Anthony P. La Rocco
  Anthony P. La Rocco

Dated:  June 5, 2020

# EXHIBIT A

## CHAPTER 32

AN ACT concerning health insurance and health care providers and supplementing various parts of the statutory law.

BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey:*

C.26:2SS-1  Short title.

1.   This act shall be known and may be cited as the "Out-of-network Consumer Protection, Transparency, Cost Containment and Accountability Act."

C.26:2SS-2  Findings, declarations relative to out-of-network health care charges.

2.   The Legislature finds and declares that:

a.   The health care delivery system in New Jersey needs reforms that will enhance consumer protections, create a system to resolve certain health care billing disputes, contain rising costs, and measure success with respect to these goals;

b.   Despite existing State and federal laws and regulations to protect against certain surprise out-of-network charges, these charges continue to pose a problem for health care consumers in New Jersey.  Many consumers find themselves with surprise bills for hospital emergency room procedures or for charges by providers that the consumer had no choice in selecting;

c.   While the Patient Protection and Affordable Care Act added new patient protections requiring federally-regulated group health plans to reimburse for out-of-network emergency service by paying the greatest of three possible amounts: (1) the amount negotiated with in-network providers for the emergency service furnished; (2) the amount for the emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services; or (3) the amount that would be paid under Medicare for the emergency service, patients continue to face out-of-network charges for surprise bills;

d.   Out-of-network benefits are a health insurance benefit enhancement for which insureds pay an additional premium, but in recent years, out-of-network coverage has been used inappropriately as a means to diminish consumers' health insurance coverage, exposing consumers to additional costs;

e.   Carriers and consumers continue to report exorbitant charges by certain health care professionals and facilities for out-of-network services, including balance billing, and in certain cases, consumers' bills are referred to collection, which contributes to the increasing costs of health care services and insurance and imposes hardships on health care consumers;

f.   Health care providers and hospitals report that inadequate reimbursement from carriers and government payers is causing financial stress on safety net hospitals, deteriorating morale among providers and reduced quality of care for consumers;

g.   It is, therefore, in the public interest to reform the health care delivery system in New Jersey to enhance consumer protections, create a system to resolve certain health care billing disputes, contain rising costs, and measure success with respect to these goals.

C.26:2SS-3  Definitions relative to out-of-network health care charges.

3.   As used in this act:

"Carrier" means an entity that contracts or offers to contract to provide, deliver, arrange for, pay for, or reimburse any of the costs of health care services under a health benefits plan, including: an insurance company authorized to issue health benefits plans; a health maintenance organization; a health, hospital, or medical service corporation; a multiple employer welfare arrangement; the State Health Benefits Program and the School Employees' Health Benefits Program; or any other entity providing a health benefits plan.

P.L.2018, CHAPTER 32

2

Except as provided under the provisions of this act, "carrier" shall not include any other entity providing or administering a self-funded health benefits plan.

"Commissioner" means the Commissioner of Banking and Insurance.

"Covered person" means a person on whose behalf a carrier is obligated to pay health care expense benefits or provide health care services.

"Department" means the Department of Banking and Insurance.

"Emergency or urgent basis" means all emergency and urgent care services including, but not limited to, the services required pursuant to N.J.A.C.11:24-5.3.

"Health benefits plan" means a benefits plan which pays or provides hospital and medical expense benefits for covered services, and is delivered or issued for delivery in this State by or through a carrier.  For the purposes of this act, "health benefits plan" shall not include the following plans, policies or contracts: Medicaid, Medicare, Medicare Advantage, accident only, credit, disability, long-term care, TRICARE supplement coverage, coverage arising out of a workers' compensation or similar law, automobile medical payment insurance, personal injury protection insurance issued pursuant to P.L.1972, c.70 (C.39:6A-1 et seq.), a dental plan as defined pursuant to section 1 of P.L.2014, c.70 (C.26:2S-26) and hospital confinement indemnity coverage.

"Health care facility" means a general acute care hospital, satellite emergency department, hospital based off-site ambulatory care facility in which ambulatory surgical cases are performed, or ambulatory surgery facility, licensed pursuant to P.L.1971, c.136 (C.26:2H-1 et seq.).

"Health care professional" means an individual, acting within the scope of his licensure or certification, who provides a covered service defined by the health benefits plan.

"Health care provider" or "provider" means a health care professional or health care facility.

"Inadvertent out-of-network services" means health care services that are: covered under a managed care health benefits plan that provides a network; and provided by an out-of-network health care provider in the event that a covered person utilizes an in-network health care facility for covered health care services and, for any reason, in-network health care services are unavailable in that facility. "Inadvertent out-of-network services" shall include laboratory testing ordered by an in-network health care provider and performed by an out-of-network bio-analytical laboratory.

"Knowingly, voluntarily, and specifically selected an out-of-network provider" means that a covered person chose the services of a specific provider, with full knowledge that the provider is out-of-network with respect to the covered person's health benefits plan, under circumstances that indicate that covered person had the opportunity to be serviced by an in-network provider, but instead selected the out-of-network provider.  Disclosure by a provider of network status shall not render a covered person's decision to proceed with treatment from that provider a choice made "knowingly" pursuant to this definition.

"Medicaid" means the State Medicaid program established pursuant to P.L.1968, c.413 (C.30:4D-1 et seq.).

"Medical necessity" or "medically necessary" means or describes a health care service that a health care provider, exercising his or her prudent clinical judgment, would provide to a covered person for the purpose of evaluating, diagnosing, or treating an illness, injury, disease, or its symptoms and that is: in accordance with the generally accepted standards of medical practice; clinically appropriate, in terms of type, frequency, extent, site, and duration, and considered effective for the covered person's illness, injury, or disease; not primarily for the convenience of the covered person or the health care provider; and not more

costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that covered person's illness, injury, or disease.

"Medicare" means the federal Medicare program established pursuant to Pub.L.89-97 (42 U.S.C. s.1395 et seq.).

"Self-funded health benefits plan" or "self-funded plan" means a self-insured health benefits plan governed by the provisions of the federal "Employee Retirement Income Security Act of 1974," 29 U.S.C. s.1001 et seq.

C.26:2SS-4  Disclosures by health care facility.

4. a. Prior to scheduling an appointment with a covered person for a non-emergency or elective procedure and in terms the covered person typically understands, a health care facility shall:

(1)  disclose to the covered person whether the health care facility is in-network or out-of-network with respect to the covered person's health benefits plan;

(2)  advise the covered person to check with the physician arranging the facility services to determine whether or not that physician is in-network or out-of-network with respect to the covered person's health benefits plan and provide information about how to determine the health plans participated in by any physician who is reasonably anticipated to provide services to the covered person;

(3)  advise the covered person that at a health care facility that is in-network with respect to the person's health benefits plan:

(a)  the covered person will have a financial responsibility applicable to an in-network procedure and not in excess of the covered person's copayment, deductible, or coinsurance as provided in the covered person's health benefits plan;

(b)  unless the covered person, at the time of the disclosure required pursuant to this subsection, has knowingly, voluntarily, and specifically selected an out-of-network provider to provide services, the covered person will not incur any out-of-pocket costs in excess of the charges applicable to an in-network procedure;

(c)  any bills, charges or attempts to collect by the facility, or any health care professional involved in the procedure, in excess of the covered person's copayment, deductible, or coinsurance as provided in the covered person's health benefits plan in violation of subparagraph (b) of this paragraph should be reported to the covered person's carrier and the relevant regulatory entity; and

(d)  that if the covered person's coverage is provided through an entity providing or administering a self-funded health benefits plan that does not elect to be subject to the provisions of section 9 of this act, that:

(i)  certain health care services may be provided on an out-of-network basis, including those services associated with the health care facility;

(ii) the covered person may have a financial responsibility applicable to health care services provided by an out-of-network provider, in excess of the covered person's copayment, deductible, or coinsurance, and the covered person may be responsible for any costs in excess of those allowed by the person's self-funded health benefits plan; and

(iii) the covered person should contact the covered person's self-funded health benefits plan sponsor for further consultation on those costs; and

(4)  advise the covered person that at a health care facility that is out-of-network with respect to the covered person's health benefits plan:

(a)  certain health care services may be provided on an out-of-network basis, including those health care services associated with the health care facility;

(b)  the covered person may have a financial responsibility applicable to health care services provided at an out-of-network facility, in excess of the covered person's copayment, deductible, or coinsurance, and the covered person may be responsible for any costs in excess of those allowed by their health benefits plan; and

(c)  that the covered person should contact the covered person's carrier for further consultation on those costs.

b.  In a form that is consistent with federal guidelines, a health care facility shall make available to the public a list of the facility's standard charges for items and services provided by the facility.

c.  A health care facility shall post on the facility's website:

(1)  the health benefits plans in which the facility is a participating provider;

(2)  a statement that:

(a)  physician services provided in the facility are not included in the facility's charges;

(b)  physicians who provide services in the facility may or may not participate with the same health benefits plans as the facility;

(c)  the covered person should check with the physician arranging for the facility services to determine the health benefits plans in which the physician participates; and

(d)  the covered person should contact their carrier for further consultation on those costs;

(3)  as applicable, the name, mailing address, and telephone number of the hospital-based physician groups that the facility has contracted with to provide services including, but not limited to, anesthesiology, pathology, and radiology; and

(4)  as applicable, the name, mailing address, and telephone number of physicians employed by the facility and whose services may be provided at the facility, and the health benefits plans in which they participate.

d.  If, between the time the notice required pursuant to subsection a. of this section is provided to the covered person and the time the procedure takes place, the network status of the facility changes as it relates to the covered person's health benefits plan, the facility shall notify the covered person promptly.

e.  The Department of Health shall specify in further detail the content and design of the disclosure form and the manner in which the form shall be provided.

C.26:2SS-5  Disclosures by health care professional relative to participation in health benefits plans.

5.  a.   Except as provided in subsection f. of this section, a health care professional shall disclose to a covered person in writing or through an internet website the health benefits plans in which the health care professional is a participating provider and the facilities with which the health care professional is affiliated prior to the provision of non-emergency services, and verbally or in writing, at the time of an appointment.  If a health care professional does not participate in the network of the covered person's health benefits plan, the health care professional shall, in terms the covered person typically understands:

(1)  Prior to scheduling a non-emergency procedure inform the covered person that the professional is out-of-network and that the amount or estimated amount the health care professional will bill the covered person for the services is available upon request;

(2)  Upon receipt of a request from a covered person for the service and the Current Procedural Terminology (CPT) codes associated with that service, disclose to the covered person in writing the amount or estimated amount that the health care professional will bill

the covered person for the service, and the CPT codes associated with that service, absent unforeseen medical circumstances that may arise when the health care service is provided;

(3)  Inform the covered person that the covered person will have a financial responsibility applicable to health care services provided by an out-of-network professional, in excess of the covered person's copayment, deductible, or coinsurance, and the covered person may be responsible for any costs in excess of those allowed by their health benefits plan; and

(4)  Advise the covered person to contact the covered person's carrier for further consultation on those costs.

b.   A health care professional who is a physician shall provide the covered person, to the extent the information is available, with the name, practice name, mailing address, and telephone number of any health care provider scheduled to perform anesthesiology, laboratory, pathology, radiology, or assistant surgeon services in connection with care to be provided in the physician's office for the covered person or coordinated or referred by the physician for the covered person at the time of referral to, or coordination of, services with that provider.  The physician shall provide instructions as to how to determine the health benefits plans in which the health care provider participates and recommend that the covered person should contact the covered person's carrier for further consultation on costs associated with these services.

 c.   A physician shall, for a covered person's scheduled facility admission or scheduled outpatient facility services, provide the covered person and the facility with the name, practice name, mailing address, and telephone number of any other physician whose services will be arranged by the physician and are scheduled at the time of the pre-admission, testing, registration, or admission at the time the non-emergency services are scheduled, and information as to how to determine the health benefits plans in which the physician participates, and recommend that the covered person should contact the covered person's carrier for further consultation on costs associated with these services.

d.   The receipt or acknowledgement by any covered person of any disclosure required pursuant to this section shall not waive or otherwise affect any protection under existing statutes or regulations regarding in-network health benefits plan coverage available to the covered person or created under this act.

e.   If, between the time the notice required pursuant to subsection a. of this section is provided to the covered person and the time the procedure takes place, the network status of the professional changes as it relates to the covered person's health benefits plan, the professional shall notify the covered person promptly.

f.   In the case of a primary care physician or internist performing an unscheduled procedure in that provider's office, the notice required pursuant this section may be made verbally at the time of the service.

g.   The appropriate professional or occupational licensing board within the Division of Consumer Affairs in the Department of Law and Public Safety shall specify in further detail the content and design of the disclosure form and the manner in which the form shall be provided.


C.26:2SS-6  Website updates of addition, deletion of provider from carrier's network.

6. a. A carrier shall update the carrier's website within 20 days of the addition or termination of a provider from the carrier's network or a change in a physician's affiliation with a facility, provided that in the case of a change in affiliation the carrier has had notice of such change.

P.L.2018, CHAPTER 32

6

b.   With respect to out-of-network services, for each health benefits plan offered, a carrier shall, consistent with State and federal law, provide a covered person with:

(1)   a clear and understandable description of the plan's out-of-network health care benefits, including the methodology used by the entity to determine the allowed amount for out-of-network services;

(2)   the allowed amount the plan will reimburse under that methodology and, in situations in which a covered person requests allowed amounts associated with a specific Current Procedural Terminology code, the portion of the allowed amount the plan will reimburse and the portion of the allowed amount that the covered person will pay, including an explanation that the covered person will be required to pay the difference between the allowed amount as defined by the carrier's plan and the charges billed by an out-of-network provider;

(3)   examples of anticipated out-of-pocket costs for frequently billed out-of-network services;

(4)   information in writing and through an internet website that reasonably permits a covered person or prospective covered person to calculate the anticipated out-of-pocket cost for out-of-network services in a geographical region or zip code based upon the difference between the amount the carrier will reimburse for out-of-network services and the usual and customary cost of out-of-network services;

(5)   information in response to a covered person's request, concerning whether a health care provider is an in-network provider;

(6)   such other information as the commissioner determines appropriate and necessary to ensure that a covered person receives sufficient information necessary to estimate their out-of-pocket cost for an out-of-network service and make a well-informed health care decision; and

(7)   access to a telephone hotline that shall be operated no less than 16 hours per day for consumers to call with questions about network status and out-of-pocket costs.

c.   If a carrier authorizes a covered health care service to be performed by an in-network health care provider with respect to any health benefits plan, and the provider or facility status changes to out-of-network before the authorized service is performed, the carrier shall notify the covered person that the provider or facility is no longer in-network as soon as practicable.  If the carrier fails to provide the notice at least 30 days prior to the authorized service being performed, the covered person's financial responsibility shall be limited to the financial responsibility the covered person would have incurred had the provider been in-network with respect to the covered person's health benefits plan.

d.   A carrier shall incorporate into the Explanation of Benefits and all reimbursement correspondence to the consumer and the provider clear and concise notification that inadvertent and involuntary out-of-network charges are not subject to balance billing above and beyond the financial responsibility incurred under the terms of the contract for in-network service. Any attempt by the provider to collect, bill, or invoice funds should be promptly reported to the carrier's customer service department at the phone number that the carrier shall provide on the Explanation of Benefits and all reimbursement correspondence to the consumer.

e.   A carrier, and any other entity providing or administering a self-funded health benefits plan that elects to be subject to section 9 of this act, shall issue a health insurance identification card to the primary insured under a health benefits plan. In a form and manner to be prescribed by the department, the card shall indicate whether the plan is insured or, in the case of self-funded plans that elect to be subject to section 9 of this act, whether the plan is self-funded and whether the plan elected is to be subject to this act.

P.L.2018, CHAPTER 32

7

f.   A carrier shall include in the carrier's annual public regulatory filings, and in a manner to be determined by the Department of Banking and Insurance, the number of claims submitted by health care providers to the carrier which are denied or down coded by the carrier and the reason for the denial or down coding determination.

C.26:2SS-7  Billing for emergency, urgent care.

7.   a.   If a covered person receives medically necessary services at any health care facility on an emergency or urgent basis as defined by the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. s.1395dd et seq. and section 14 of P.L.1992, c.160 (C.26:2H-18.64), the facility shall not bill the covered person in excess of any deductible, copayment, or coinsurance amount applicable to in-network services pursuant to the covered person's health benefits plan.

b.   If a covered person receives medically necessary services at an out-of-network health care facility on an emergency or urgent basis as defined by the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. s.1395dd et seq. and section 14 of P.L.1992, c.160 (C.26:2H-18.64), and the carrier and facility cannot agree on the final offer as a reimbursement rate for these services pursuant to section 9 of this act, the carrier, health care facility, or covered person, as applicable, may initiate binding arbitration pursuant to section 10 or 11 of this act.

c.   If a health care facility is in-network with respect to any health benefits plan, the facility shall ensure that all providers providing services in the facility on an emergency or inadvertent basis are provided notification of the provisions of this act and information as to each health benefits plan with which the facility has a contract to be in-network.

d.   A health care facility that contracts with a carrier to be in-network with respect to any health benefits plan shall annually report to the Department of Health the health benefits plans with which the facility has an agreement to be in-network.

e.   Subsections a. and b. of this section shall only apply to providers providing services to members of entities providing or administering a self-funded health benefits plan and its plan members if the entity elects to be subject to section 9 of this act pursuant to subsection d. of that section.

f.   The Department of Health shall make the information collected pursuant to subsection d. of this section available to the Department of Banking and Insurance.

C.26:2SS-8  Coverage for inadvertent out-of-network emergency services.

8.   a.   If a covered person receives inadvertent out-of-network services or medically necessary services at an in-network or out-of-network health care facility on an emergency or urgent basis as defined by the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. s.1395dd et seq. and section 14 of P.L.1992, c.160 (C.26:2H-18.64), the health care professional performing those services shall:

(1)  in the case of inadvertent out-of-network services, not bill the covered person in excess of any deductible, copayment, or coinsurance amount; and

(2)  in the case of emergency and urgent services, not bill the covered person in excess of any deductible, copayment, or coinsurance amount, applicable to in-network services pursuant to the covered person's health benefits plan.

b.   If the carrier and the professional cannot agree on a reimbursement rate for the services provided pursuant to subsection a. of this section, pursuant to section 9 of this act the carrier, professional, or covered person, as applicable, may initiate binding arbitration pursuant to section 10 or 11 of this act.

P.L.2018, CHAPTER 32

8

c. This section shall only apply to providers providing services to members of entities providing or administering a self-funded health benefits plan and its plan members if the entity elects to be subject to section 9 of this act pursuant to subsection d. of that section.

C.26:2SS-9  Responsibilities of carrier relative to inadvertent out-of-network services.

9. Notwithstanding any law, rule, or regulation to the contrary:

a. With respect to a carrier, if a covered person receives inadvertent out-of-network services, or services at an in-network or out-of-network health care facility on an emergency or urgent basis, the carrier shall ensure that the covered person incurs no greater out-of-pocket costs than the covered person would have incurred with an in-network health care provider for covered services. Pursuant to sections 7 and 8 of this act, the out-of-network provider shall not bill the covered person, except for applicable deductible, copayment, or coinsurance amounts that would apply if the covered person utilized an in-network health care provider for the covered services. In the case of services provided to a member of a self-funded plan that does not elect to be subject to the provisions of this section, the provider shall be permitted to bill the covered person in excess of the applicable deductible, copayment, or coinsurance amounts.

b. (1) With respect to inadvertent out-of-network services, or services at an in-network or out-of-network health care facility on an emergency or urgent basis, benefits provided by a carrier that the covered person receives for health care services shall be assigned to the out-of-network health care provider, which shall require no action on the part of the covered person. Once the benefit is assigned as provided in this subsection:

(a) any reimbursement paid by the carrier shall be paid directly to the out-of-network provider; and

(b) the carrier shall provide the out-of-network provider with a written remittance of payment that specifies the proposed reimbursement and the applicable deductible, copayment, or coinsurance amounts owed by the covered person.

(2) An entity providing or administering a self-funded health benefits plan that elects to participate in this section pursuant to subsection d. of this section, shall comply with the provisions of paragraph (1) of this subsection.

c. If inadvertent out-of-network services or services provided at an in-network or out-of-network health care facility on an emergency or urgent basis are performed in accordance with subsection a. of this section, the out-of-network provider may bill the carrier for the services rendered. The carrier may pay the billed amount or the carrier shall determine within 20 days from the date of the receipt of the claim for the services whether the carrier considers the claim to be excessive, and if so, the carrier shall notify the provider of this determination within 20 days of the receipt of the claim. If the carrier provides this notification, the carrier and the provider shall have 30 days from the date of this notification to negotiate a settlement. The carrier may attempt to negotiate a final reimbursement amount with the out-of-network health care provider which differs from the amount paid by the carrier pursuant to this subsection. If there is no settlement reached after the 30 days, the carrier shall pay the provider their final offer for the services. If the carrier and provider cannot agree on the final offer as a reimbursement rate for these services, the carrier, provider, or covered person, as applicable, may initiate binding arbitration within 30 days of the final offer, pursuant to section 10 or 11 of this act. In addition, in the event that arbitration is initiated pursuant to section 10 of this act, the payment shall be subject to the binding arbitration provisions of paragraphs (4) and (5) of subsection b. of section 10 of this act.

P.L.2018, CHAPTER 32

9

d.   With respect to an entity providing or administering a self-funded health benefits plan and its plan members, this section shall only apply if the plan elects to be subject to the provisions of this section.  To elect to be subject to the provisions of this section, the self-funded plan shall provide notice, on an annual basis, to the department, on a form and in a manner prescribed by the department, attesting to the plan's participation and agreeing to be bound by the provisions of this section.  The self-funded plan shall amend the employee benefit plan, coverage policies, contracts and any other plan documents to reflect that the benefits of this section shall apply to the plan's members.

C.26:2SS-10  Payment disputes, binding arbitration.

10. a. If attempts to negotiate reimbursement for services provided by an out-of-network health care provider, pursuant to subsection c. of section 9 of this act, do not result in a resolution of the payment dispute, and the difference between the carrier's and the provider's final offers is not less than $1,000, the carrier or out-of-network health care provider may initiate binding arbitration to determine payment for the services.

  b.   The binding arbitration shall adhere to the following requirements:

(1)  The party requesting arbitration shall notify the other party that arbitration has been initiated and state its final offer before arbitration, which in the case of the carrier shall be the amount paid pursuant to subsection c. of section 9 of this act. In response to this notice, the out-of-network provider shall inform the carrier of its final offer before the arbitration occurs;

(2)  Arbitration shall be initiated by filing a request with the department;

(3)  The department shall contract, through the request for proposal process, every three years, with one or more entities that have experience in health care pricing arbitration.  The arbitrators shall be American Arbitration Association certified arbitrators.  The department may initially utilize the entity engaged under the "Health Claims Authorization, Processing, and Payment Act," P.L.2005, c.352 (C.17B:30-48 et seq.), for arbitration under this act; however, after a period of one year from the effective date of this act, the selection of the arbitration entity shall be through the Request for Proposal process.  Claims that are subject to arbitration pursuant to the provisions of this act, which previously would be subject to arbitration pursuant to the "Health Claims Authorization, Processing, and Payment Act," shall instead be subject to this act;

(4)  The arbitration shall consist of a review of the written submissions by both parties, which shall include the final offer for the payment by the carrier for the out-of-network health care provider's fee made pursuant to subsection c. of section 9 of this act and the final offer by the out-of-network provider for the fee the provider will accept as payment from the carrier; and

(5)  The arbitrator's decision shall be one of the two amounts submitted by the parties as their final offers and shall be binding on both parties.  The decision of the arbitrator shall include written findings and shall be issued within 30 days after the request is filed with the department.  The arbitrator's expenses and fees shall be split equally among the parties except in situations in which the arbitrator determines that the payment made by the carrier was not made in good faith, in which case the carrier shall be responsible for all of the arbitrator's expenses and fees.  Each party shall be responsible for its own costs and fees, including legal fees if any.

c. (1) The amount awarded by the arbitrator that is in excess of any payment already made pursuant to subsection c. of section 9 of this act shall be paid within 20 days of the arbitrator's decision as provided in subsection b. of this section.

P.L.2018, CHAPTER 32

10

(2)  The interest charges for overdue payments, pursuant to P.L.1999, c.154 (C.17B:30-23 et al.), shall not apply during the pendency of a decision under subsection b. of this section and any interest required to be paid a provider pursuant to P.L.1999, c.154 (C.17B:30-23 et al.) shall not accrue until after 20 days following an arbitrator's decision as provided in subsection b. of this section, but in no circumstances longer than 150 days from the date that the out-of-network provider billed the carrier for services rendered, unless both parties agree to a longer period of time.

d.  This section shall apply only if the covered person complies with any applicable preauthorization or review requirements of the health benefits plan regarding the determination of medical necessity to access in-network inpatient or outpatient benefits.

e.  This section shall not apply to a covered person who knowingly, voluntarily, and specifically selected an out-of-network provider for health care services.

f.  In the event an entity providing or administering a self-funded health benefits plan elects to be subject to the provisions of section 9 of this act, as provided in subsection d. of that section, the provisions of this section shall apply to a self-funded plan in the same manner as the provisions of this section apply to a carrier.  If a self-funded plan does not elect to be subject to the provision of section 9 of this act, a member of that plan may initiate binding arbitration as provided in section 11 of this act.

C.26:2SS-11  Payment disputes for member of self-funded plan, binding arbitration.

11.  a.  If attempts to negotiate reimbursement for services between an out-of-network health care provider and a member of a self-funded plan that does not elect to be subject to the provisions of section 9 of this act do not result in a resolution of the payment dispute within 30 days after the plan member is sent a bill for the services, the plan member or out-of-network health care provider may initiate binding arbitration to determine payment for the services.  Unless negotiations for reimbursement result in an agreement between the provider and the plan member within the 30 days, a provider shall not collect or attempt to collect reimbursement, including initiation of any collection proceedings, until the provider files a request for arbitration with the department pursuant to this section.

b.  The binding arbitration shall adhere to the following requirements:

(1)  Arbitration shall be initiated by filing a request with the department.  The department shall establish a process to notify the other party that arbitration has been initiated and to inform a plan member of the process to arbitrate pursuant to this section;

(2)  The arbitrator with which the department contracts pursuant to section 10 of this act shall conduct the arbitration pursuant to this section;

(3)  The arbitrator shall consider information supplied by both parties; and

(4)  The arbitrator's decision shall include written findings, including a final binding amount that the arbitrator determines is reasonable for the service, which shall include a non-binding recommendation to the entity providing or administering the self-funded health benefits plan of an amount that would be reasonable for the entity to contribute to payment for the service, and shall be issued within 30 days after the request is filed with the department.

c.  The arbitrator's expenses and fees shall be divided equally among the parties, unless the payment would pose a financial hardship to the plan member, in which case the department shall establish an agreement with the arbitrator to waive any part or all of the cost of arbitration.  Each party shall be responsible for its own costs and fees, including legal fees, if any.

P.L.2018, CHAPTER 32
11

d.  This section shall not apply to a covered person who knowingly, voluntarily, and specifically selected an out-of-network provider for health care services.

C.26:2SS-12  Listing of arbitrations on website.

12.  On or before January 31 of each calendar year, the commissioner shall consult with the Department of the Treasury, the relevant professional and occupational licensing boards within the Division of Consumer Affairs in the Department of Law and Public Safety, and the Department of Health, to obtain information to compile and make publicly available, on the department's website:

a.  A list of all arbitrations filed pursuant to sections 10 and 11 of this act between January 1 and December 31 of the previous calendar year, including the percentage of all claims that were arbitrated.

(1)  For each arbitration decision, the list shall include but not be limited to:

(a)  an indication of whether the decision was in favor of the carrier or the out-of-network health care provider;

(b)  the arbitration bids offered by each side and the award amount;

(c)  the category and practice specialty of each out-of-network health care provider involved in an arbitration decision, as applicable; and

(d)  a description of the service that was provided and billed for.

(2)  The list of arbitration decisions shall not include any information specifically identifying the provider, carrier, or covered person involved in each arbitration decision.

b.  The percentage of facilities and hospital-based professionals, by specialty, that are in-network for each carrier in this State as reported pursuant to subsection d. of section 7 of this act.

c.  The number of complaints the department receives relating to out-of-network health care charges.

d.  The number of and description of claims received by the State Health Benefits Program and the School Employees' Health Benefits Program for in-State emergency out-of-network health care and inadvertent out-of-network health care.

e.  Annual trends on health benefits plan premium rates, total annual amount of spending on inadvertent and emergency out-of-network costs by carriers, and medical loss ratios in the State to the extent that the information is available.

f.  The number of physician specialists practicing in the State in a particular specialty and whether they are in-network or out-of-network with respect to the carriers that administer the State Health Benefits Program, the School Employees' Health Benefits Program, the qualified health plans in the federally run health exchange in the State, and other health benefits plans offered in the State.

g.  The results of the network audit required pursuant to section 16 of this act.

h.  A summary of the information submitted to the department pursuant to subsection f. of section 6 of this act concerning the number of claims submitted by health care providers to carriers which are denied or down coded by the carrier and the reasons for the denials or down coding determinations.

i.  Any other benchmarks or information obtained pursuant to this act that the commissioner deems appropriate to make publicly available to further the goals of the act.

C.26:2SS-13  Notice of protections provided.

13.  a.  A carrier shall provide a written notice, in a form and manner to be prescribed by the Commissioner of Banking and Insurance, to each covered person of the protections provided to

P.L.2018, CHAPTER 32
12

covered persons pursuant to this act.  The notice shall include information on how a consumer can contact the department or the appropriate regulatory agency to report and dispute an out-of-network charge.  The notice required pursuant to this section shall be posted on the carrier's website.

b.  The commissioner shall provide a notice on the department's website containing information for consumers relating to the protections provided by this act, information on how consumers can report and file complaints with the department or the appropriate regulatory agency relating to any out-of-network charges, and information and guidance for consumers regarding arbitrations filed pursuant to section 11 of this act.

C.26:2SS-14  Calculation of savings; reports.

14.  a.  A carrier shall calculate, as part of rate filings required to be filed under New Jersey law, the savings that result from a reduction in out-of-network claims payments pursuant to the provisions of this act.  The department shall include that information in the information provided on the department's website pursuant to section 12 of this act.

b.  The department shall report to the Governor, and to the Legislature pursuant to section 2 of P.L.1991, c.164 (C.52:14-19.1), no later than 12 months after the effective date of this act and annually thereafter, on the savings to policyholders and the healthcare system that result from the provisions of this act.  The report shall contain an analysis of the information compiled pursuant to section 12 of this act.

C.26:2SS-15  Violations, inducements.

15. a. It shall be a violation of this act if an out-of-network health care provider, directly or indirectly related to a claim, knowingly waives, rebates, gives, pays, or offers to waive, rebate, give or pay all or part of the deductible, copayment, or coinsurance owed by a covered person pursuant to the terms of the covered person's health benefits plan as an inducement for the covered person to seek health care services from that provider.  As the commissioner shall prescribe by regulation, a pattern of waiving, rebating, giving or paying all or part of the deductible, copayment or coinsurance by a provider shall be considered an inducement for the purposes of this subsection.

b.  This section shall not apply to any waiver, rebate, gift, payment, or offer that falls within a safe harbor under federal laws related to fraud and abuse concerning patient cost-sharing, including, but not limited to, anti-kickback, self-referral, false claims, and civil monetary penalties, including any advisory opinions issued by the Centers for Medicare and Medicaid Services or the Office of Inspector General pertaining to those laws.

C.26:2SS-16  Annual audit of managed care plan.

16.  A carrier which offers a managed care plan shall provide for an annual audit of its provider network by an independent private auditing firm.  The audit shall be at the expense of the carrier and the carrier shall submit the audit findings to the commissioner.  The commissioner shall make the results of the audit available on the department's website. If the audit contains a determination that a carrier has failed to maintain an adequate network of providers in accordance with applicable federal or State law, in addition to any other penalties or remedies available under federal or State law, it shall be a violation of this act and the commissioner may initiate such action as the commissioner deems appropriate to ensure compliance with this act and network adequacy laws.

C.26:2SS-17  Violations; penalties.

P.L.2018, CHAPTER 32

13

17.  a.  A person or entity that violates any provision of this act, or the rules and regulations adopted pursuant hereto, shall be liable to a penalty as provided in this subsection.  The penalty shall be collected by the commissioner in the name of the State in a summary proceeding in accordance with the "Penalty Enforcement Law of 1999," P.L.1999, c.274 (C.2A:58-10 et seq.).

(1) A health care facility or carrier that violates any provision of this act shall be liable to a penalty of not more than $1,000 for each violation.  Every day upon which a violation occurs shall be considered a separate violation, but no facility or carrier shall be liable to a penalty greater than $25,000 for each occurrence.

(2) A person or entity not covered by paragraph (1) of this subsection that violates the requirements of this act shall be liable to a penalty of not more than $100 for each violation. Every day upon which a violation occurs shall be considered a separate violation, but no person or entity shall be liable to a penalty greater than $2,500 for each occurrence.

b.  Upon a finding that a person or entity has failed to comply with the requirements of this act, including the payment of a penalty as determined under subsection a. of this section, the commissioner may:

(1) in the case of a carrier, initiate such action as the commissioner determines appropriate;

(2) in the case of a health care facility, refer the matter to the Commissioner of Health for such action as the Commissioner of Health determines appropriate; or

(3) in the case of a health care professional, refer the matter to the appropriate professional or occupational licensing board within the Division of Consumer Affairs in the Department of Law and Public Safety for such action as that board determines appropriate.

C.26:2SS-18  Rules, regulations.

18. The Commissioner of Banking and Insurance, the Commissioner of Health and any relevant licensing board in the Division of Consumer Affairs in the Department of Law and Public Safety under Title 45 of the Revised Statutes may, as appropriate, adopt rules and regulations, pursuant to the "Administrative Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.), in order to effectuate the purposes of this act.

C.26:2SS-19  Severability.

19.  The provisions of this act shall be severable, and if any provision of this act shall be held invalid, or held invalid with respect to any particular health benefits plan or carrier, such invalidity shall not affect the other provisions hereof, or application of those provisions to other health benefits plans or carriers.

C.26:2SS-20  Construction of act.

20. Nothing in this act shall be construed to apply to an entity providing or administering a self-funded health benefits plan which is subject to the "Employee Retirement Income Security Act of 1974," except as provided in subsection d. of section 9 of this act for such an entity to elect to be subject to certain provisions of the act.

21. This act shall take effect on the 90th day next following enactment. The Commissioner of Banking and Insurance, the Department of Health and any relevant licensing board may take such anticipatory administrative action in advance thereof as shall be necessary for the implementation of this act.

Approved June 1, 2018.

# EXHIBIT B



**State of New Jersey**
DEPARTMENT OF BANKING AND INSURANCE
OFFICE OF THE COMMISSIONER
PO BOX 325
TRENTON, NJ 08625-0325

TEL (609) 292-7272

PHIL MURPHY
*Governor*

SHEILA OLIVER
*Lt. Governor*

MARLENE CARIDE
*Commissioner*

## BULLETIN NO. 18-14

**TO:**   ALL INSURANCE COMPANIES AUTHORIZED TO ISSUE HEALTH BENEFITS PLANS, HEALTH MAINTENANCE ORGANIZATIONS, HEALTH SERVICE CORPORATIONS, HOSPITAL SERVICE CORPORATIONS, MEDICAL SERVICE CORPORATIONS, MULTIPLE EMPLOYER WELFARE ARRANGEMENTS, THE STATE HEALTH BENEFITS PROGRAM, THE SCHOOL EMPLOYEES' HEALTH BENEFITS PROGRAM, ENTITIES PROVIDING HEALTH BENEFITS PLANS, AND OTHER INTERESTED PARTIES

**FROM:**   MARLENE CARIDE, COMMISSIONER

**RE:**   IMPLEMENTATION OF P.L. 2018, C. 32 (N.J.S.A. 26:2SS-1 to -20) OUT-OF-NETWORK CONSUMER PROTECTION, TRANSPARENCY, COST CONTAINMENT AND ACCOUNTABILITY ACT

On June 1, 2018, the Out-Of-Network Consumer Protection, Transparency, Cost Containment, and Accountability Act, P.L. 2018, c. 32 (codified at N.J.S.A. 26:2SS-1 to -20), ("Act"), was enacted, and became effective on August 30, 2018. This Act enhances consumer protections from surprise bills for out-of-network health care services, in addition to making changes to several elements of New Jersey's health care delivery system. These improvements include transparency and various consumer disclosures, the creation of an arbitration system, and cost containment for out-of-network services. The Department of Banking and Insurance ("Department") is issuing this Bulletin to provide guidance to carriers,[1] health care providers, and other interested parties to help those entities meet their obligations under the Act, pending the adoption of rules. The Department anticipates proposing such rules in the near future.

---

[1] As defined in the Act, a "carrier" is an entity that contracts or offers to contract to provide, deliver, arrange for, pay for, or reimburse any of the costs of health care services under a health benefits plan, including: an insurance company authorized to issue health benefits plans; a health maintenance organization; a health, hospital, or medical service corporation; a multiple employer welfare arrangement ("MEWA"); the State Health Benefits Program, and the School Employees' Health Benefits Program; or any other entity providing a health benefits plan. See N.J.S.A. 26:2SS-3.

The transparency provisions of the Act apply to all carriers operating in New Jersey with regards to health benefits plans issued in New Jersey. The claims processing and arbitration provisions of the Act apply to all policies issued by carriers without regard to whether the policy contains coverage for voluntary out-of-network benefits. Further, the claims processing and arbitration provisions of the Act apply when the out-of-network services were rendered on an inadvertent[2] and/or emergency or urgent basis[3] ("involuntary") (collectively, "inadvertent and/or involuntary out-of-network services") in New Jersey and by a New Jersey licensed or certified health care provider (subject to limited exceptions for laboratory services further discussed herein) to a covered person under a health benefits plan issued in New Jersey. The claims processing and binding arbitration sections of the Act may also apply to self-funded health benefits plans that elect to be subject to the claims processing and arbitration provisions of the Act and that cover New Jersey residents.

The Act limits a covered person's cost-sharing liability to the network level cost-sharing as applied to the allowed amount/charge[4] when inadvertent and/or involuntary out-of-network services are rendered. Cost-sharing is the covered person's network level deductible, copayments, or coinsurance, and does not refer to a specific dollar amount. It is important to note that a covered person's cost-sharing liability under the Act is based upon the application of network cost-sharing, not a network level reimbursement amount, which will vary in amount by and among carriers and plans, and even within and among a carrier's plans, depending on the in-network provider. If the covered person is covered by a tiered health benefits plan, the cost-sharing applied for inadvertent and/or involuntary out-of-network services should be the preferred, lowest cost tier. Providers are prohibited from balance billing a covered person for inadvertent and/or involuntary out-of-network services above the amount of the covered person's liability based upon the application of network cost-sharing to the allowed charge/amount.

It is important to note that covered persons cannot waive their rights under the Act. The Act provides that a provider does not render a covered person's decision to proceed with treatment from a provider a choice that was made "knowingly" simply by disclosing the provider's network

[2] "Inadvertent out-of-network services" means health care services that are: covered under a managed care health benefits plan that provides a network; and provided by an out-of-network health care provider in the event that a covered person utilizes an in-network health care facility for covered health care services and, for any reason, in-network health care services are unavailable in that facility. "Inadvertent out-of-network services" shall include laboratory testing ordered by an in-network health care provider and performed by an out-of-network bio-analytical laboratory. See N.J.S.A. 26:2SS-3.

[3] "Emergency or urgent basis" means all emergency and urgent care services including, but not limited to, the services required pursuant to N.J.A.C.11:24-5.3. See N.J.S.A. 26:2SS-3.

[4] Allowed charge/amount means the allowance for the service as determined by the carrier.

status.[5]  See N.J.S.A. 26:2SS-3.  As such, waivers provided to covered persons in situations where inadvertent and/or involuntary out-of-network services may be provided does not remove those services from the purview of the Act, and thus, providers must not balance bill covered persons for inadvertent and/or involuntary out-of-network services even if those covered persons sign waivers for, or consent to, those services.

While the provision of medically necessary services by an out-of-network urgent care or emergency facility clearly constitutes involuntary out-of-network services to which the arbitration provisions of the Act apply, it is important to note that any admissions into the same out-of-network facility resulting from the involuntary out-of-network services will also be subject to arbitration under the Act up to the point when the covered person can be safely transported to an in-network facility, and including the means of transfer between facilities. Since all plans require providers and covered persons to notify the carrier within a certain number of days upon a facility admission, the carrier will have knowledge of such an involuntary out-of-network admission and be able to engage in utilization management.[6]  If during such utilization management, the carrier authorizes a continued stay in the out-of-network facility past the date upon which the covered person can be safely transferred to an in-network facility, the services rendered after that determination will be considered an in-plan exception, and the services will not be subject to arbitration under the Act. If the carrier does not authorize the continued stay in the out-of-network facility and requires transfer, but the covered person elects to stay at the out-of-network facility, the services rendered after the date of safe transfer would be considered voluntary out-of-network services and are not subject to arbitration under the Act.

In totality, the Act both creates and modifies processes and requires carriers to take action with regard to the following, as briefly summarized below.  Details regarding implementation of the Act's requirements are provided throughout the remainder of the Bulletin.

**Claims Processing and Arbitration:** The Act creates an arbitration process to resolve out-of-network billing disputes for inadvertent and/or involuntary out-of-network services.  Where carriers and out-of-network health care providers cannot agree upon reimbursement for such services, an arbitrator will choose between the parties' final offers as provided herein. See N.J.S.A. 26:2SS-10.  A self-funded plan may opt to be subject to the claims processing and arbitration provisions, as provided herein, and be subject to the same arbitration process as carriers in the

---

[5]  "Knowingly, voluntarily, and specifically selected an out-of-network provider" means that a covered person chose the services of a specific provider, with full knowledge that the provider is out-of-network with respect to the covered person's health benefits plan, under circumstances that indicate that covered person had the opportunity to be serviced by an in-network provider, but instead selected the out-of-network provider.  See N.J.S.A. 26:2SS-3.

[6]  Carriers may engage in utilization management to the extent permitted by New Jersey law.  For example, P.L. 2017, c. 28 limits a carrier's ability to engage in utilization management upon admissions for treatment of substance use disorders.  These protections still apply and may lengthen the period of an involuntary out-of-network admission to which the arbitration provisions of the Act apply.

insured markets. See N.J.S.A. 26:2SS-9(d) and10(f). However, a self-funded plan that opts to be subject to the claims processing and arbitration provision of the Act is not bound to the transparency disclosures and other sections of the Act. In the case of a self-funded plan, which does not elect to be subject to the claims processing and arbitration provisions of the Act, a covered person under that plan or an out-of-network health care provider may initiate arbitration, wherein the arbitrator will choose a final amount that the arbitrator determines is reasonable, which is binding on the covered person and the out-of-network health care provider but not on the self-funded health benefits plan that did not opt-in to arbitration. See N.J.S.A. 26:2SS-11.

**Out-of-Network Billing:** The Act prohibits providers from billing covered persons for inadvertent and/or involuntary out-of-network services for any amount above the amount resulting from the application of network level cost-sharing to the allowed charge/amount. See N.J.S.A. 26:2SS-7 to -9. The Act also prohibits out-of-network health care providers, except in certain circumstances, from directly or indirectly, knowingly waiving, rebating, giving, paying, or offering to waive rebate, give, or pay all or part of a covered person's deductible, copayment, or coinsurance required under the covered person's health benefits plan as an inducement for the covered person to seek services from that out-of-network health care provider. See N.J.S.A. 26:2SS-16.

**Disclosure and Transparency:** For managed care plans with a network, carriers are required to: maintain up-to-date website postings of network providers; provide clear and detailed information regarding how voluntary out-of-network services are covered for plans that feature out-of-network coverage; provide examples of out-of-network costs; provide treatment specific information as to estimated costs when requested by a covered person; and maintain a telephone hotline to address questions. See N.J.S.A. 26:2SS-6.

## CLAIMS PROCESSING AND ARBITRATION

**Processing of Claims for Inadvertent and/or Involuntary Out-of-Network Services Prior to Arbitration, N.J.S.A. 26:2SS-9**

Consistent with the guidance below, carriers must comply with the provisions of the prompt payment laws in processing claims for inadvertent and/or involuntary out-of-network services.

**1)    Initial Out-of-Network Claims Processing:**

Pursuant to N.J.S.A. 26:2SS-9(c), upon the receipt of a claim for inadvertent and/or involuntary out-of-network services, carriers must either:

Option 1:    Pay the charges as billed by the out-of-network health care provider; or,

Option 2:    Determine within 20 days of the receipt of the claim that the out-of-network health care provider's billed charges exceed the amount that the carrier initially determined is the allowed charge/amount for those services and process the claim as follows:

Page 4 of 29

- Remit, electronically or by certified mail, payment for its portion of the initial allowed charge/amount to the out-of-network health care provider with remittance advice, thateither includes text or is accompanied by a separate document, which details:

  - o information to identify the specific remittance advice, covered person, and impacted claims that have been determined to exceed the amount that the carrier has initially determined is the allowed charge/amount for those services, and to which the initial allowed charge/amount applies;
  - o that the claim is for inadvertent and/or involuntary out-of-network services, that the carrier has concluded that the billed charges exceed the amount that the carrier initially determined is the allowed charge/amount for those services, and the methods to initiate negotiation, which must include certified mail, email, and online form submission;
  - o that the carrier is not paying the out-of-network health care provider's billed charges, and instead, is paying its portion of what has been initially determined to be the allowed charge/amount;
  - o that if the out-of-network health care provider does not accept the carrier's initial allowed charge/amount as payment in full, the out-of-network health care provider has the right to negotiate with the carrier for 30 days from the date of the receipt of the carrier's notification that it deemed that the out-of-network health care provider's billed charges exceed the amount that the carrier initially determined is the allowed charge/amount for those services;
  - o that to exercise this right, the out-of-network health care provider must advise the carrier of its intent to reject the carrier's allowed charge/amount as payment in full by methods identified by the carrier, which must include certified mail, email, and online form submission, within 30 days of receipt of the carrier's notification that it deemed that the out-of-network health care provider's billed charges exceed the amount that the carrier initially determined is the allowed charge/amount for those services; and
  - o that if the out-of-network health care provider does not contact the carrier within 30 days of receipt of the carrier's notification that it deemed that the out-of-network health care provider's billed charges exceed the amount that the carrier initially determined is the allowed charge/amount for those services, the out-of-network health care provider cannot seek redress through the arbitration process set forth in the Act; and

- Upon the issuance of the payment for its portion of the initial allowed charge/amount to the out-of-network health care provider, the carrier must issue an Explanation of Benefits ("EOB") to the covered person that includes text, or be accompanied by a separate document, which details that:

Page 5 of 29

- o the claim is for inadvertent and/or involuntary out-of-network services and the carrier has concluded that the billed charges exceed the amount that the carrier initially determined is the allowed charge/amount for those services;
- o the carrier is not paying the out-of-network health care provider's billed charges and is paying its portion of what has been initially determined to be the allowed charge/amount;
- o the out-of-network health care provider can reject the carrier's initial allowed charge/amount as being considered payment in full;
- o if the carrier's initial allowed charge/amount is rejected by the out-of-network health care provider as insufficient reimbursement, the amount of the allowed charge/amount may be subject to negotiation;
- o if negotiation is pursued and is successful, the amount of the allowed charge/amount may increase, which will result in the carrier paying more and may increase the covered person's cost-sharing liability for the out-of-network claim;[7]
- o if negotiation is unsuccessful, both the carrier and the out-of-network health care provider can seek to enter into arbitration;
- o if negotiation is not pursued by the provider, this EOB becomes final and indicates the covered person's cost-sharing liability for the inadvertent and/or involuntary out-of-network services; and
- o the covered person shall not be balanced billed by the out-of-network health care provider for the inadvertent and/or involuntary out-of-network services above the covered person's cost-sharing liability, as set forth in the EOB or subsequent EOBs, and any attempts by the out-of-network health care provider to balance bill the covered person above the covered person's cost-sharing liability should be reported to the carrier and a complaint filed with the appropriate provider's licensing board or the Department of Health, as appropriate.

It is the Department's expectation that out-of-network health care providers will bill the covered person for the covered person's cost-sharing liability for inadvertent and/or involuntary out-of-network services once. Thus, the covered person's cost-sharing liability will become due and payable upon acceptance of the initial allowed charge/amount, or upon issuance of an EOB upon the negotiated settlement/carrier's final offer payment made by the carrier as set forth below.

**2)    Negotiation:**

If the out-of-network health provider rejects the initial allowed charge/amount, the Act provides that the allowed charge/amount is subject to negotiation between the carrier and the out-of-network health care provider for no more than 30 days following the date of receipt of the

---

[7] Since network level cost-sharing is applied to the allowed charge/amount, an increase in the allowed charge/amount can result in increased cost-sharing liability depending on the processing of additional claims and the status of the covered person's satisfaction of their maximum out-of-pocket ("MOOP") liability.

carrier's notification that it deemed that the out-of-network health care provider's billed charges exceed the amount that the carrier initially determined is the allowed charge/amount for those services. As provided above, the out-of-network health care provider that is seeking to engage in negotiation must advise the carrier of its intent to reject the carrier's initial allowed charge/amount as payment in full within 30 days of receipt of the carrier's notification that it concluded that the billed charges exceed the amount that the carrier initially determined is the allowed charge/amount for those services. See N.J.S.A. 26:2SS-9. A provider's failure to do so will bar arbitration of the claim for involuntary and/or inadvertent out-of-network services.

When Settlement is Achieved: If a negotiated settlement as to the allowed charge/amount is reached within 30 days following the date of receipt of the carrier's notification that the provider's billed charges exceed the carrier's initial determination, the carrier must remit payment for the additional liability for its portion of the negotiated allowed charge/amount to the out-of-network health care provider within 30 days of settlement. The remittance advice to the out-of-network health care provider, which may be accompanied by a separate document, if needed, and a second EOB to the covered person, which may be accompanied by a separate document, if needed, must include text, which details that:

- the final allowed charge/amount has been successfully negotiated between the carrier and the out-of-network health care provider, and that this negotiated amount will be accepted as payment in full for the claim for inadvertent and/or involuntary out-of-network services;
- the amounts of the initial allowed charge/amount, initial carrier payment, and the covered person's cost-sharing liability based upon those amounts;
- the amounts of the negotiated allowed charge/amount, revised carrier payment, and the covered person's final cost-sharing liability for the inadvertent and/or involuntary out-of-network services as of the time of reprocessing;
- the additional amount paid by the carrier, calculated as the difference between the initial carrier payment and the revised carrier payment; and
- the covered person shall not be balanced billed by the out-of-network health care provider for the inadvertent and/or involuntary out-of-network services above the covered person's cost-sharing liability as set forth in this second EOB, and any attempts by the out-of-network health care provider to balance bill the covered person above the covered person's cost-sharing liability should be reported to the carrier and a complaint filed with the provider's licensing board or the Department of Health, as appropriate.

When Settlement is Not Achieved: If a negotiated settlement is not reached, the carrier, within seven days of the expiration of the 30-day negotiation period, must:

- notify the out-of-network health care provider of the carrier's final offer allowed charge/amount;
- remit additional payment of its portion of the final offer allowed charge/amount to the out-of-network health care provider; and
- issue a second EOB, which may be accompanied by a separate document, if needed, to the covered person, and remittance advice or a similar notice, which may be accompanied

by a separate document, if needed, to the out-of-network health care provider, that sets forth the following:

o  That a negotiated settlement of the allowed charge/amount was not achieved;
o  The amounts of the initial allowed charge/amount, initial carrier payment, and the covered person's cost-sharing liability based upon those amounts;
o  The amounts of the carrier's final offer allowed charge/amount, revised carrier payment, and the covered person's final cost-sharing liability for the inadvertent and/or involuntary out-of-network services as of the time of reprocessing;
o  If the carrier's final offer allowed charge/amount is higher than the initial allowed charge/amount, then the carrier must advise that the amount of the allowed charge/amount has increased and that the covered person's total cost-sharing liability has or has not increased, depending on the circumstances of the covered person's cost-sharing at the time of reprocessing;
o  The additional amount paid by the carrier, calculated as the difference between the initial carrier payment and the revised carrier payment;
o  That the covered person's cost-sharing liability will not increase further, even if the carrier or out-of-network health care provider enter into binding arbitration; and
o  That the covered person shall not be balanced billed by the out-of-network health care provider for the inadvertent and/or involuntary out-of-network services above the covered person's cost-sharing liability, as set forth in the second EOB and any attempts by the out-of-network health care provider to balance bill the covered person above the covered person's cost-sharing liability should be reported to the carrier and a complaint filed with the provider's licensing board or the Department of Health, as appropriate.

As already noted, it is the Department's expectation that out-of-network health care providers will bill the covered person for the covered person's cost-sharing liability for inadvertent and/or involuntary out-of-network services once. Thus, if the provider rejects the carrier's initial allowed charge/amount as payment in full, the covered person's cost-sharing liability will become due and payable upon the negotiated settlement/carrier's final offer payment. The covered person's cost-sharing liability will not increase further, even if the arbitration award increases the allowed charge/amount for the claim for inadvertent and/or involuntary out-of-network services.

**Arbitration of Claims for Inadvertent and/or Involuntary Out-of-Network Services[8]**

_____

[8]  Other mechanisms of appeal and arbitration provided under New Jersey law continue to exist and are available for use by providers and covered persons, such as the Independent Health Care Appeals Program for medical necessity issues and the New Jersey Program for Independent Claims Payment Arbitration ("PICPA") established by the Health Claims Authorization, Processing and Payment Act, P.L. 2005, c. 352. However, PICPA and arbitration under the Act are mutually exclusive, i.e. a matter that is eligible for arbitration under the Act because it is a claim for inadvertent and/or involuntary out-of-network services must not be submitted to PICPA (voluntary arbitration for all other types of healthcare reimbursement disputes). For assistance as to which

This arbitration process applies to all claims for inadvertent and/or involuntary out-of-network services provided in New Jersey by a provider that is licensed or certified by New Jersey with dates of service on and after August 30, 2018, under health benefits plans issued in New Jersey (subject to some exception for laboratory services as discussed below), and to self-funded health benefits plans that opt-in under the Act and cover New Jersey residents.  N.J.S.A. 26:2SS-10 and 11.  For claims for inadvertent and/or involuntary out-of-network services with multiple dates of service submitted on one claim, e.g. hospitalization beginning on August 29, 2018 and ending on September 1, 2018, the arbitration process under the Act only applies if the initial date of service is on or after August 30, 2018.  In this example, the hospitalization is not eligible for arbitration because the initial date, August 29 occurred prior to the effective date of the Act.  This arbitration process does not apply to voluntary out-of-network treatment or out-of-network treatment provided through an in-plan exception.  Additionally, the following claims handling processes and disclosures must be implemented by all carriers for handling of all claims for inadvertent and/or involuntary out-of-network services rendered on or after August 30, 2018.[9]

For claims for inadvertent and/or involuntary out-of-network services that are not resolved as paid-in-full pursuant to the claims and negotiation processes set forth above, the carrier, which includes self-funded plans that elect to be subject to the claims processing and arbitration provisions of the Act pursuant to N.J.S.A. 26:2SS-11(f), or an out-of-network health care provider can request to enter into binding arbitration within 30 days of the out-of-network health care provider's receipt of the carrier's notification that sets forth the carrier's final offer if:

- the difference between the carrier's final offer allowed charge/amount and the out-of-network health care provider's final offer is $1,000 or higher;
- all applicable preauthorization or notice requirements of the health benefits plan were complied with; and
- the matter does not involve a dispute as to whether a treatment or service is:

  o medically necessary;
  o experimental or investigational;
  o cosmetic; or

---

arbitration or appeal mechanism applies, see the "Appeal and Arbitration Processes Grid," attached hereto as Attachment A.

[9] For claims for inadvertent and involuntary out-of-network services that are ripe for arbitration on or before the date that this Bulletin is issued and that otherwise comply with the Act, but that fail to meet a technical or timing requirement contained in this Bulletin, the Department's out-of-network arbitration vender, which will be MAXIMUS, Inc. for the first year after the effective date of the Act, will accept the requests for arbitrations notwithstanding a failure to comply with the timing and technical requirements set forth in this Bulletin. However, arbitration requests for those claims for inadvertent and involuntary out-of-network services that occur after the date of this Bulletin, should comply with the requirements as set forth herein, or the request may be rejected by MAXIMUS, Inc.

o medical or dental for which the carrier should have authorized services to be performed by an out-of-network health care provider through an in-plan exception because the carrier's network lacks a provider who is accessible and possesses the requisite skill and expertise to perform the needed services.

From August 30, 2018, through August 30, 2019, the Department will use its current vendor for the New Jersey Program for Independent Claims Payment Arbitration ("PICPA") established by the Health Claims Authorization, Processing and Payment Act ("HCAPPA"), P.L. 2005, c. 352. to administer the Out-of-Network Arbitration System ("OON Arbitration"), MAXIMUS, Inc. ("MAXIMUS"). Thereafter, the Department will engage the services of an arbitration vendor for OON Arbitrations through its procurement processes. See N.J.S.A. 26:2SS-10(b)(3).

During the initial year, instructions as to how to file OON Arbitration requests will be posted on MAXIMUS's website. OON arbitration will be initiated by submitting a completed "Application for Arbitration of Payment for Inadvertent, Emergency or Urgent Out-of-Network Health Care Services" form ("OON Arbitration Application"), attached hereto as Attachment B (https://nj.gov/dobi/division_insurance/oonarbitration/requestform.pdf), directly to MAXIMUS through its website.[10]

Upon receipt of a request for arbitration, MAXIMUS will promptly review the request to determine whether it is eligible for arbitration pursuant to the requirements of the Act, as set forth herein, and for completeness. MAXIMUS will accept for processing a complete application that meets the following criteria:

- The covered person's health benefits plan was delivered, or issued for delivery, in New Jersey and is not an out-of-state plan or a Federal plan, including Managed Medicaid;
- The covered person was enrolled in the health benefits plan at the time that the inadvertent and/or involuntary out-of-network service was rendered;
- An out-of-network health care provider, who is licensed or certified in New Jersey, rendered a covered service to a covered person in New Jersey under the health benefits plan, and the services provided were inadvertent and/or involuntary out-of-network services. For laboratory testing by a laboratory licensed in New Jersey, this includes when tests are ordered by an in-network health care provider and any necessary services for the test (e.g. blood draw) are rendered to the covered person in New Jersey without regard to the situs of the laboratory performing the testing;

---

[10] Currently, MAXIMUS will be accepting OON Arbitration Applications through its established website for PICPA at https://njpicpa.maximus.com/njportal. Parties requesting OON Arbitration should submit the OON Arbitration Application, attached as Attachment B, and accompanying documents pursuant to the instructions set forth on this website. However, MAXIMUS is in the process of creating an OON Arbitration specific portal for future OON Arbitration requests. Upon implementation of an OON Arbitration specific portal on MAXIMUS's website, all subsequent requests for OON Arbitration should be submitted through the new OON Arbitration portal.

- The disputed amount—the difference between the carrier's and out-of-network health care provider's final offers—is $1,000 or more. Claim aggregation is permitted for the same covered person experiencing multiple services rendered by the same out-of-network health care provider during the course of the same admission in an in-network facility or the same emergent/urgent event;
- The initiating party's final offer for the allowed charge/amount is specified in the request, which for a carrier must be the amount set forth in the second EOB;
- The OON Arbitration Application includes, or the covered person has previously submitted, a fully-executed "Consent to Representation in Appeals of Utilization Management Determinations and Authorization for Release of Medical Records in UM Appeals and Independent Arbitration of Claims" form in the event that the covered person's confidential information accompanies the arbitration request; and
- The party initiating the arbitration request has submitted all information requested by MAXIMUS, as necessary, with the OON Arbitration Application and the applicable fee.

MAXIMUS will reject an OON Arbitration Application received in excess of 30 days after the provider's receipt of the carrier's notification of its final offer allowed charge/amount. MAXIMUS shall also reject a request for OON Arbitration upon a demonstration by the carrier that the provider did not notify of its rejection of the initial allowed charge/amount within thirty (30) days of receipt of the carrier's notification that the out-of-network health care provider's billed charges exceed the amount that the carrier initially determined is the allowed charge/amount for those services.

Within seven business days of receipt of an OON Arbitration Application, MAXIMUS will acknowledge receipt of the application to the parties and provide notice of any deficiencies in the OON Arbitration Application or accompanying documents, and of the procedures for correcting such deficiencies. If the initiating party fails to correct any deficiencies within 15 days, the OON Arbitration Application will be deemed withdrawn. If the responding party fails to correct any deficiencies within 15 days and the initiating party has complied with all requests, the award may be issued for the initiating party upon notice to all parties and a continuing failure to cure the deficiencies within the timeframes provided in that notice.

If an OON Arbitration Application is rejected based upon information submitted with the OON Arbitration Application, MAXIMUS will retain the initiating party's review fee and refund the arbitration fee. If the OON Arbitration Application is initially accepted, but later rejected as ineligible based upon information submitted in whole or in part by the non-initiating party, MAXIMUS will retain the review fees of both parties and refund the arbitration fees.

The only evidence admissible in the arbitration proceeding, or on which the arbitrator's determination may be made, are the documents submitted to, requested by, and accepted by, MAXIMUS from the parties to the dispute. In-person or telephonic testimony will not be permitted.

Within 30 days of the receipt of a complete OON Arbitration Application and accompanying documents, the arbitrator will issue a decision subject to the following requirements:

- The decision must be in writing and issued by the arbitrator;[11]
- The decision must select either the final offer of the out-of-network health care provider or of the carrier as the amount awarded;
- The decision will split the costs of the arbitration between the parties to the arbitration, unless the carrier is found to not have acted in good faith;
- The decision will not award legal fees or costs; and
- The decision will be binding on all parties and will only be subject to vacation or modification in accordance with N.J.S.A. 2A:24-1.

If the out-of-network health care provider prevails in the arbitration, the carrier must remit payment of the difference between its portion of its final offer allowed charge/amount and the arbitration award within 20 days of the date of the arbitration decision. The carrier must pay the arbitration award in full without any increase in the covered person's cost-sharing liability. If the carrier fails to remit payment within this timeframe, interest of 12 percent per annum will accrue, starting on the 21st day after the date of the arbitration decision, pursuant to HCAPPA. Interest will terminate on the date of payment, but no later than 150 days after the date of the claim receipt, unless the parties agree to a longer period of time.

The carrier must notify the covered person of the results of the arbitration award upon payment of an arbitration award, if applicable, but no later than 30 days from the date of the arbitration decision. The carrier must notify the covered person of the arbitration result through the issuance of a final EOB, that includes text, or is accompanied by a separate document, that advises of the following:

- the arbitration decision has been issued;
- the amount of the arbitration award for final allowed charge/amount, any revised carrier payment, based upon the arbitrator's award, if applicable, and the covered person's final cost-sharing liability for the claim as of the time of reprocessing, which shall not be greater

---

[11]  N.J.S.A 26:2SS-10 provides the following: "[t]he [D]epartment shall contract, through the request for proposal process, every three years, with one or more entities that have experience in health care pricing arbitration. The arbitrators shall be American Arbitration Association certified arbitrators. The [D]epartment may initially utilize the entity engaged under the "Health Claims Authorization, Processing, and Payment Act," P.L.2005, c.352 (C.17B:30-48 et seq.), for arbitration under this act; however, after a period of one year from the effective date of this act, the selection of the arbitration entity shall be through the Request for Proposal process." This provision allows for the use of MAXIMUS and it current staff of arbitrators during the first year; subsequent Request for Proposal processes shall require compliance with the remaining provisions regarding certification of such arbitrators.

than the covered person's cost-sharing liability, based upon the carrier's final offer allowed charge/amount as disclosed in the second EOB;

- the amount, if any, paid by the carrier, based upon the difference between the final offer allowed charge/amount and the arbitration award; and

- that this notice is provided only for the information of the covered person, and that the covered person is not responsible for any increased cost-sharing liability as a result of the arbitration award;

- that the covered person shall not be balanced billed by the out-of-network health care provider for the inadvertent and/or involuntary out-of-network services above the covered person's cost-sharing liability, as set forth in the second and final EOB, and any attempts by the out-of-network health care provider to balance bill the covered person above the covered person's cost-sharing liability should be reported to the carrier and a complaint filed with the provider's licensing board or the Department of Health, as appropriate.

**Process for Arbitration without Opt-In by Self-Funded Health Benefits Plans**

For any self-funded health benefits plan, which covers New Jersey residents, that does not opt to participate in the OON Arbitration, the member of the self-funded plan or the out-of-network health care provider may request binding arbitration for claims for inadvertent and/or involuntary out-of-network services, if there is no resolution of a payment dispute within 30 days after the member is sent a bill for the services. Specifically, an out-of-network health care provider may bill the member once upon the initial adjudication of the claim for inadvertent and/or involuntary out-of-network services by the self-funded plan. Thereafter, a 30-day negotiation period is commenced, during which time, the out-of-network health care provider must not collect or attempt to collect reimbursement from the member, including through the initiation of collection proceedings. After the expiration of the 30-day negotiation period, either the out-of-network health care provider or the member may initiate arbitration. The out-of-network health care provider may not balance bill the member or initiate collection activity until the provider has filed a request for arbitration. Arbitrations under this section will be administered by the Department's OON Arbitration vendor, as discussed above. Voluntary out-of-network claims are not eligible for arbitration.

Participation in OON Arbitration must be requested by submitting a completed OON Arbitration Application, attached hereto as Attachment B, directly to MAXIMUS.[12] Upon receipt of a request, MAXIMUS will promptly review the request to determine whether it is eligible for arbitration pursuant to the requirements of the Act, set forth herein, and the completeness of the application. MAXIMUS will accept for processing a complete application that meets the following criteria:

- The health benefits plan at issue is a self-funded plan that has not opted to participate in OON arbitration pursuant to the Act;
- The self-funded plan covers emergency or urgent services rendered by an out-of-network health care provider;

---

[12] See fn10 above.

- The member was enrolled in the self-funded plan at the time the inadvertent and/or involuntary services were rendered;
- The member has been balance billed by an out-of-network health care provider for the inadvertent and/or involuntary services rendered;
- The OON Arbitration Application includes, or the member has previously submitted, a fully-executed "Consent to Representation in Appeals of Utilization Management Determinations and Authorization for Release of Medical Records in UM Appeals and Independent Arbitration of Claims" form in the event that the member's confidential information accompanies the arbitration request; and
- The party initiating the arbitration request has submitted all information requested by MAXIMUS, as necessary, with the OON Arbitration Application and the applicable fee.

MAXIMUS will not accept the request unless 30 days have elapsed from issuance of the health care provider's bill to the member.  The arbitration proceeding will be conducted pursuant to the procedures set forth above.

The only evidence admissible in an arbitration proceeding, or on which the arbitrator's determination may be made, are the documents submitted to, requested by, and accepted by, MAXIMUS by the parties to the dispute.  In-person or telephonic testimony will not be permitted.

Within 30 days of the receipt of a complete OON Arbitration Application and accompanying documents, the arbitrator will issue a decision subject to the following requirements:

- The decision must be in writing and issued by an arbitrator;[13]
- The decision must award an amount that the arbitrator determines is reasonable for the inadvertent and/or involuntary out-of-network service(s);
- The decision will split the costs of arbitration between the parties to the arbitration, unless the payment would pose a financial hardship to the member, which can be demonstrated by total family income below 250% of the Federal Poverty Level.
- The decision will not award legal fees or costs; and
- The decision will only be binding on the member and the out-of-network health care provider, and must include a non-binding recommendation to the entity providing or administering the self-funded health benefits plan of an amount that would be reasonable for the inadvertent and/or involuntary out-of-network service(s).

**Self-Funded Health Benefits Plans and Out-of-Network Arbitration**

Under current rules at N.J.A.C. 11:22-8, all carriers, third party administrators, or other entities, that provide or administer a self-funded health benefits plan in New Jersey must issue a health plan identification card to the primary covered person under a self-funded health benefits plan.  The carrier, third party administrator, or other entity is permitted to contract with an administrator, agent, contractor, or other vendor to issue the cards; however, the entity responsible

---

[13]  See fn 11 above.

for administration of the self-funded plan that is licensed in New Jersey remains responsible for the proper issuance of the cards and for their compliance. The Act requires the addition of whether the plan has opted-in to the arbitration provisions under the Act. Thus, issuance of identification cards compliant with the Act must occur upon the earliest of the following: issuance of a new or renewal plan or the self-funded plan's opt-in to OON Arbitration.

The following information should appear on the identification cards in a readily identifiable manner:

- The name of the carrier, third party administrator, MEWA, or other entity administering the self-funded health benefits plan;
- Upper-case text as follows on the front of the card: "SELF-FUNDED";
- Text indicating that the self-funded health benefits plan has elected to participate in the OON Arbitration, pursuant to N.J.S.A.26:2SS-9 and 10, which is to be located on the front of the card below or adjacent to "SELF-FUNDED," and should state: "NJ Arbitration – Yes as of [insert effective date (after which all claims for inadvertent and/or involuntary out-of-network services incurred are subject to arbitration) that is at least two weeks after mailing of card]."

Self-funded health benefits plans that do not elect to participate in OON Arbitration pursuant to the Act are not required to provide any additional statements on the identification cards that indicate their participation status.

Additionally, every entity that provides or administers a self-funded health benefits plan that elects to be subject to OON Arbitration under N.J.S.A.26:2SS-9 and 10 and as discussed above shall make an informational filing with the Department of the form of the identification card. This informational filing should be submitted to the Department at the following address:

> New Jersey Department of Banking and Insurance
> Attention: Life and Health Division
> Self-Funded Health Benefits Plans – Arbitration
> 20 West State Street
> Trenton, NJ 08625-0325

## OUT-OF-NETWORK BILLING AND COST-SHARING WAIVERS

### Balance Billing for Inadvertent or Involuntary Out-of-Network Services

As discussed throughout and provided in the Act, covered persons shall be not be balance billed by any health care provider for inadvertent and/or involuntary out-of-network services above and beyond the financial responsibility that would have been incurred if the same service(s) had been provided by an in-network health care provider. See N.J.S.A. 26:2SS-7(a) and N.J.S.A. 26:2SS-8(c)(1).

### Prohibitions on Waiver of Cost-Sharing

An out-of-network health care provider shall not directly or indirectly, knowingly waive, rebate, give, pay, or offer to waive, rebate, give, or pay all or part of a covered person's deductible, copayment, or coinsurance required under the person's health benefits plan as an inducement for the covered person to seek services from such out-of-network health care provider. See N.J.S.A. 26:2SS-15. A pattern of waiving, rebating, giving, or paying all or part of the deductible copayment or coinsurance by a provider shall be considered an inducement.

An out-of-network health care provider may waive, rebate, give, pay, or offer to waive rebate, give, or pay all or part of a covered person's deductible, copayment, or coinsurance required under the person's health benefits plan if:

- the waiver, rebate, gift, payment, or offer falls within any safe harbor under federal laws related to fraud and abuse concerning patient cost-sharing, including as provided in any advisory opinions issued by the Centers for Medicare and Medicaid Services or the Office of Inspector General relating thereto;

OR

- the waiver, rebate, giving, payment, or offer thereof is not offered as part of any advertisement or solicitation; the out-of-network health care provider does not routinely waive, rebate, give, pay, or offer to waive rebate, give, or pay all or part of a covered person's deductible, copayment, or coinsurance required under the person's health benefits plan; and the out-of-network health care provider

  o waives, rebates, gives, pays, or offers to waive rebate, give, or pay all or part of a covered person's deductible, copayment, or coinsurance required under the person's health benefits plan after determining in good faith that the covered person is in financial need; or
  o fails to collect the covered person's deductible, copayment, or coinsurance after making reasonable collection efforts, which reasonable efforts shall not necessarily include initiating collection proceedings.

## DISCLOSURE AND TRANSPARENCY

**Required Disclosures to Consumers Regarding Out-Of-Network Treatment**

Carriers shall provide covered persons with clear and understandable descriptions of the benefits for services rendered by out-of-network health care providers that are covered under their specific health benefits plan, including benefits for such services when rendered on an emergency or urgent basis, for inadvertent out-of-network services, and where applicable, for voluntary out-of-network treatment as described below through and by the following dates:

- a customized "Summary of Coverage for Out-of-Network Treatment Under a Plan and Protections Under New Jersey Law" ("Summary")—attached as Attachment C—starting with plans issued or renewed on or after January 1, 2019;
- an internet website – as of August 30, 2018; and
- a telephone hotline – as of August 30, 2018.

Attached hereto as Attachment C is a template Summary that carriers may wish to use to provide the transparency disclosures required by the Act. The template Summary contains mandatory and optional charts with mandatory and variable text that provide the transparency disclosures required under the Act. Carriers that elect to use the Summary should customize it based upon the terms of the specific health benefits plan applicable to the covered person receiving the Summary. Carriers should provide the transparency disclosures upon the issuance of a new plan, any material change to any aspects of the summarized benefits under an in-force plan, and upon request from a covered person. The Summary contains the following specific disclosures:

- How the plan covers medically necessary treatment on an emergency or urgent basis by out-of-network health care professionals and facilities, also known as involuntary out-of-network services;
- How the plan covers treatment by an out-of-network healthcare professional for services when a covered person uses an in-network health care facility (e.g. hospital, ambulatory surgery center, etc.) and, for any reason, in-network health care services are unavailable or rendered by out-of-network health care provider in that in-network facility, including laboratory testing ordered by an in-network provider and performed by an out-of-network bio-analytical laboratory;
- That a covered person's cost-sharing liability for inadvertent and/or involuntary out-of-network services is limited to the network level cost-sharing under the plan;
- A description of the ability of carriers to negotiate and settle with out-of-network health care providers to pay less than the amount billed for inadvertent and/or involuntary out-of-network services, and how that settlement may increase the covered person's cost-sharing liability above the amount indicated in the initial EOB;[14]
- A description of the right of carriers and out-of-network health care providers to enter into binding arbitration for inadvertent and/or involuntary out-of-network services to determine the amount to be paid by the carrier for the such services where an agreement cannot be reached through negotiation and the provider does not accept the payment with the second EOB, including disclosures that the arbitration award will not increase the covered person's cost-sharing liability above the amount in the second EOB;
- How all plans cover treatment from out-of-network health care providers if in-network health care providers are not available in accordance with the applicable network adequacy standards and that the ability to access a provider through a request for an in-plan exception. Note that the denial of such request is an adverse benefit determination subject to internal and external appeals as discussed in Attachment A;
- If the plan is a preferred provider organization plan ("PPO") or point of service plan ("POS") that covers treatment when a covered person voluntarily seeks to use out-of-

---

[14] See fn7 above.

network health care providers for the provision of covered services, known as voluntary out-of-network treatment, including: the cost-sharing applicable to voluntary out-of-network treatment and the carrier's basis for calculating the allowed charge/amount;

- How to obtain more information from the carrier regarding whether a provider is in-network, examples of out-of-network costs, and how to estimate costs for out-of-network treatment for specific Current Procedural Terminology ("CPT") codes; and
- The internet website address(es) and telephone hotline number maintained by the carrier to provide information on out-of-network coverage and issues.

Carriers that elect to create their own disclosures must ensure that the above elements are contained in the disclosures.

Carriers are also required to maintain an internet website that provides:

- the same information as set forth above for each health benefits plan offered by the carrier in New Jersey. See N.J.S.A. 26:2SS-6;
- a clear and prominent disclaimer that any estimates or examples provided by the carrier for out-of-network costs do not take into account the amounts that the covered person may have already paid for their cost-sharing liability that accumulate toward the MOOP. See N.J.S.A. 26:2SS-6;
- a clear and prominent disclaimer that out-of-network arbitration is only mandatory with respect to services provided by a provider that is licensed or certified in New Jersey. See N.J.S.A. 26:2SS-3; and
- information that enables prospective members to calculate the anticipated out-of-pocket costs for voluntary out-of-network services in a geographical region or zip code. See N.J.S.A. 26:2SS-6(b)(4).

The provision of CPT code-specific disclosures of out-of-network allowed charges/amounts are only required for current covered persons and may be placed on members-only portions of the carrier's website. See N.J.S.A. 26:2SS-6(b)(1), (2), (3), (5), and (7).

Carriers must also maintain a telephone hotline that is operated for at least 16 hours per day and staffed with at least one live representative capable of responding to questions about network status and out-of-pocket costs. See N.J.S.A. 26:2SS-6(b)(7).

11/20/18
Date

Marlene Caride
Commissioner

# ATTACHMENT A

Page 19 of 29

Appeal and Arbitration Processes Grid

| Process Name | Issues that can be Resolved | Who can Initiate | Who Decides | Citations |
|---|---|---|---|---|
| Independent Health Care Appeals Program (established by Health Care Quality Act)<br><br>IHCAP | Medical Necessity of services, including whether a service is experimental, investigational, cosmetic, and dental rather than medical, whether an in-plan exception is warranted, and whether services are required on an emergency or urgent basis | Covered person, or provider acting with consent of the covered person | Independent Utilization Review Organizations under contract with the Commissioner, currently Island Peer Review Organization and Permedion | N.J.S.A. 26:2S-11 and 12, N.J.A.C. 11:24-8.7 and N.J.A.C. 11:24A-3.6 |
| Program for Independent Claims Payment Arbitration (established by Health Claims Authorization, Processing and Payment Act)<br><br>PICPA | What is the appropriate payment for a covered service rendered by a provider, excludes disputes that can be submitted to the IHCAP and OON Arbitration | Network providers - any type of covered service, Out-of-network providers – services that do not qualify as inadvertent or emergency or urgent | Nationally recognized independent arbitration organization under contract with the Commissioner, currently MAXIMUS | N.J.S.A. 17:48-8.4e(2), N.J.S.A. 17:48A-7.12e(2), N.J.S.A. 17:48E-10.1e(2), N.J.S.A. 17B:26-9.1e(2), N.J.S.A. 17B:27-44.2e(2), N.J.S.A. 26:2J-8.1e(2), N.J.S.A. 17:48F-13.1e(2) and N.J.A.C. 11:22-1.13 |
| Out-of-Network Inadvertent and | Whether the final offer of the carrier or the final | Out-of-network providers and carriers | Entity with experience in health care pricing | N.J.S.A. 26:2SS-10 |

| Emergent/Urgent Arbitration (established by Out-of-network Consumer Protection, Transparency, Cost Containment and Accountability Act)<br><br>OON Arbitration | offer of the out-of-network provider is the appropriate reimbursement for inadvertent or emergency or urgent services rendered by the out-of-network provider where the person is covered by an insured plan, MEWA, SHBP/SEHBP or by a self-funded plan that opts to participate in the binding OON Arbitration process,<br><br>Or<br><br>What is a reasonable payment for inadvertent, emergency or urgent (involuntary) services rendered by the out-of-network provider when the person is covered by a self-funded plan that does not opt to participate in the binding OON Arbitration process | for insured plans, MEWAs, SHBP/SEHBP, out-of-network providers and plan administrators for self-funded plans that opt in to OON Arbitration, and covered persons and out-of-network providers for self-funded plans that do not opt in to OON Arbitration | arbitration and using American Arbitration Association certified arbitrations that is under contract with the Department, initially MAXIMUS | |
|---|---|---|---|---|

# ATTACHMENT B

Page 22 of 29

**New Jersey Department of Banking and Insurance**
**APPLICATION FOR ARBITRATION OF PAYMENT FOR INADVERTENT, EMERGENCY OR URGENT OUT-OF-NETWORK HEALTH CARE SERVICES**
In accordance with P.L. 2018, c. 32 (N.J.S.A. 26:2SS-1 to -20)

N.J.S.A. 26:2SS-1 to -20 permits health care providers, carriers and, in certain instances, covered persons to apply for arbitration when they cannot agree on the appropriate reimbursement for health care services rendered by an out-of-network health care provider on an inadvertent[1], emergency or urgent basis. This is the Out-of-Network Arbitration System (OON Arbitration).

**Use this form to request OON Arbitration only if:**

1. The covered person to whom health care services were rendered was covered under a network-based health benefits plan that was issued by a carrier in New Jersey;
2. The health care service was rendered in New Jersey by a New Jersey licensed facility or practitioner;
3. The health care provider that rendered the health care services is not in the network of the covered person's health benefits plan;
4. The covered person received out-of-network services from: (a) an out-of-network health care provider at an in-network health care facility on an inadvertent basis; (b) an out-of-network health care facility and/or practitioner on an emergency or urgent basis; or, (c) an out-of-network bio-analytical laboratory that performed a test that was ordered by an in-network health care provider and the covered person was not provided the opportunity to select an in-network bio-analytical laboratory; and
5. There is no dispute as to whether the health care services provided were Medically Necessary[2], cosmetic, experimental or investigational, or warranted an in-plan exception and the services are otherwise covered under the terms of the covered person's health benefits plan.

This application for arbitration can be submitted by a health care provider, by the carrier (which, for purposes of this process includes the SHBP, the SEHBP, a MEWA, and any other payor providing a self-funded health benefits plan that opts into arbitration), or by a person covered by a self-funded health benefits plan in New Jersey that did not opt to participate in arbitration. However, a health benefits plan does not include coverage through Medicare or Medicaid.

**Self-funded Plans**
Employers that self-fund may elect to use the OON Arbitration. If a self-funded plan chooses to use the OON Arbitration, the plan will be bound by the decision of the arbitrator. Persons covered by self-funded plans that do not opt into OON Arbitration and the providers who treat such persons can still request OON Arbitration but the arbitrator's decision will not be binding on the self-funded plan and will not be based on the final offers of the provider and the self-funded plan. The arbitrator's decision will be binding on the covered person and the provider.

**Release of Medical Records**
If a health care provider needs to provide medical records to support a claim in OON Arbitration, the health care provider must submit a completed *Consent to Representation in Appeals of Utilization Management Determinations and Authorization for Release of Medical Records in UM Appeals and Independent Arbitration of Claims*. A covered person does not need to submit this form. The form is available at https://www.state.nj.us/dobi/division_insurance/drcorner.htm.

**Other Issues**
If dissatisfied with a claims determination, but the situation does not meet the requirements for a OON Arbitration, there are other processes available for health care providers or consumers to use. See https://www.state.nj.us/dobi/division_insurance/drcorner.htm.

**Submit this completed form and attachments to the OON Arbitration vender's website.**

---

[1] N.J.S.A. 26:2SS-3 defines inadvertent to refer to services provided by an out-of-network provider in an in-network facility where in-network services are unavailable in the facility for any reason.

[2] N.J.S.A. 26:2SS-3 defines medically necessary as a health care service that a health care provider, exercising prudent clinical judgment, would provide to evaluate, diagnose or treat an illness, injury, disease or its symptoms, and that is consistent with generally accepted medical practice, clinically appropriate, not primarily for the convenience of the covered person or health care provider, and not more costly than an alternative service or services at least as likely to produce equivalent therapeutic or diagnostic results.

DOBIOONARB 10/18

Page 1 of 2

New Jersey Department of Banking and Insurance
**APPLICATION FOR ARBITRATION OF PAYMENT FOR INADVERTENT, EMERGENCY OR URGENT OUT-OF-NETWORK HEALTH CARE SERVICES**
In accordance with P.L. 2018, c. 32 (N.J.S.A. 26:2SS-1 to -20)

Applicant's Name *(please print)*:_____

Applicant is/represents the *(check one)*:  ☐ Provider    ☐ Carrier    ☐ TPA    ☐ Employer    ☐ Patient

**A. Provider Information**

| 1.Provider Name: | | 2.TIN/NPI: |
|---|---|---|
| 3.Provider Group (if applicable): | | |
| 4.Contact Name: | 5.Title: | |
| 6.Contact Address: | | |
| 7.PH: | 8.Fax: | 9.Email: |

**B. Patient & Coverage**

| 1.Patient Name: | 2.ID: |
|---|---|
| 3.Subscriber's Name: | 4.ID: |

5.Coverage Type *(check one)*:
☐ Individual/Nongroup    ☐ Group/Employer-based    ☐ SHBP/SEHBP

6.Coverage is provided/administered by *(check one, and add the appropriate name below)*:
☐ Carrier    ☐ TPA    ☐ Employer (Plan Sponsor) – *select this if there is no TPA or Carrier indicated*

Name:

7. a. Is the group coverage a self-funded health benefits plan?    ☐ Yes    ☐ No    ☐ Not applicable

b. If yes, has the plan sponsor agreed to this Independent Arbitration?    ☐ Yes    ☐ No    ☐ Unknown

**C. Claim Information**

| 1.Date of Service: | 2.Service Type *(check one)*:  ☐ Emergency/Urgent    ☐ Inadvertent |
|---|---|
| 3.Claim #: | 4.Authorization #: |

| 5.List the codes in dispute: | 6.Attach the following:<br>☐ Claim<br>☐ Initial EOB/Carrier's Initial Offer<br>☐ Additional EOBs / Carrier's Final Offer<br>☐ Health Care Provider's Final Offer |
|---|---|
| | 7.Specify one:<br>☐ The *Consent to Representation in Appeals of Utilization Management Determinations and Authorization for Release of Medical Records in UM Appeals and Independent Arbitration of Claims* is attached, with medical records<br>☐ Medical records have not been submitted and are not needed |

Applicant's Signature:_____    Date:_____/_____/_____

# ATTACHMENT C

Page 25 of 29

# Disclosures to Covered Persons Regarding Out-of-Network Treatment

THIS SUMMARY ONLY PROVIDES AN OVERVIEW OF HOW A COVERED PERSON'S HEALTH BENEFITS PLAN COVERS OUT-OF-NETWORK TREATMENT. IT IS ONLY GUIDANCE TO HELP A COVERED PERSON UNDERSTAND THEIR OUT-OF-NETWORK BENEFITS. THIS SUMMARY DOES NOT ALTER YOUR COVERAGE IN ANY WAY.

THE COVERED PERSON SHOULD REFER TO THEIR INDIVIDUAL POLICY, GROUP POLICY, CERTIFICATE OR EVIDENCE OF COVERAGE (IF EMPLOYER GROUP PLAN), OR SUMMARY OF BENEFITS AND COVERAGES FOR MORE INFORMATION ABOUT YOUR OUT-OF-NETWORK BENEFITS AND ABOUT COVERAGES AND COSTS FOR IN-NETWORK TREATMENT.

FOR ADDITIONAL INFORMATION – INCLUDING WHETHER A HEALTH CARE PROFESSIONAL OR FACILITY IS IN-NETWORK OR OUT-OF-NETWORK, EXAMPLES OF OUT-OF-NETWORK COSTS AND ESTIMATES FOR SPECIFIC SERVICES - PLEASE CONTACT US AT:
*[INSERT TOLL-FREE TELEPHONE NUMBER THAT WILL BE ACTIVE AT LEAST 16 HOURS A DAY and HOURS OF OPERATION]*, OR
VISIT OUR WEBSITE AT: *[INSERT SPECIFIC URL FOR WEBSITE PAGE ADDRESSING OUT-OF-NETWORK BENEFITS FOR APPLICABLE NEW JERSEY HEALTH BENEFITS PLAN]*.

*[The following three charts are mandatory disclosures.]*

| Your Policy Covers: | What this Means: | How Am I Protected by NJ law? |
|---|---|---|
| Medically Necessary Treatment on an Emergency or Urgent Basis by Out-Of-Network Health Care Professionals/Facilities | Emergency - You are covered for out-of-network treatment for a medical condition manifesting itself by acute symptoms of sufficient severity including, but not limited to, severe pain; psychiatric disturbances and/or symptoms of Substance Use Disorder such that a prudent layperson, who possesses an average knowledge of health and medicine, could expect the absence of immediate medical attention to result in: placing the health of the individual or unborn child in serious jeopardy; serious impairment to bodily functions; or serious dysfunction of a bodily organ or part. This includes any further medical examination and such treatment as may be required to stabilize the medical condition. This also includes if there is inadequate time to affect a safe transfer of a pregnant woman to another hospital before delivery or such transfer may pose a threat to the health or safety of the woman or unborn child.<br><br>Urgent – You are covered for out-of-network treatment of a non-life-threatening condition that requires care by a health care professional within 24 hours. | Except as discussed below, you should not be billed by an out-of-network health care professional or facility, for any amount in excess of any deductible, copayment, or coinsurance amounts (also known as "cost-sharing") applicable to the same services when received in-network. If you receive a bill for any other amount, please contact us at the number above, and/or file a complaint with the Department of Banking and Insurance: www.state.nj.us/dobi/consumer.htm.<br><br>Your carrier and the out-of-network health care professional/facility may negotiate and settle on an amount that is ultimately paid for the emergent/urgent medical services. If that negotiated amount exceeds what was indicated on the initial Explanation of Benefits, your out-of-pocket cost-sharing liability may increase above the amount indicated on the initial Explanation of Benefits. Your total final costs will be provided on the final Explanation of Benefits if settled.<br><br>If an agreement cannot be reached, your carrier or the out-of-network health care professional/facility may seek to enter into binding arbitration to determine the amount to be paid for the medical services. The |

| | | amount awarded by the arbitrator may exceed what the carrier has already paid to the out-of-network health care professional/facility; however, any additional amount paid by the carrier pursuant to the arbitration award will not increase your cost-sharing liability above the amount indicated as your responsibility on the second Explanation of Benefits associated with the last payment made to the health care professional/facility before any arbitration. If arbitration is conducted, you will also receive a final Explanation of Benefits that will show the total allowed charge/amount for the service(s). |
|---|---|---|

| Your Policy Covers: | What this Means: | How Am I Protected by NJ law? |
|---|---|---|
| Inadvertent out-of-network services | You are covered for treatment by an out-of-network health care professional for covered services when you use an in-network health care facility (e.g. hospital, ambulatory surgery center, etc.) and, for any reason, in-network health care services are unavailable or provided by an out-of-network health care professional in that in-network facility. This includes laboratory testing ordered by an in-network health care professional and performed by an out-of-network bio-analytical laboratory (e.g., imaging, x-rays, blood tests, and anesthesia). | Except as provided below, you should not be billed by an out-of-network health care professional or facility, for any amount in excess of any deductible, copayment, or coinsurance amounts (also known as "cost-sharing") applicable to the same services when received in-network. If you receive a bill for any other amount, please contact us at the number above, and/or file a complaint with the Department of Banking and Insurance: https://www.state.nj.us/dobi/consumer.htm |
| | | Your carrier and the out-of-network health care professional/facility may negotiate and settle on an amount that is ultimately paid for the inadvertent out-of-network services. If that negotiated amount exceeds what was indicated on the initial Explanation of Benefits, your out-of-pocket cost-sharing liability may increase above the amount indicated on the initial Explanation of Benefits. Your total final costs will be provided on the final Explanation of Benefits if settled. |
| | | If an agreement cannot be reached, your carrier or the out-of-network health care professional/facility may seek to enter into binding arbitration to determine the amount to be paid for the inadvertent out-of-network services. The amount awarded by the arbitrator may exceed what the carrier has already paid to an out-of-network health care professional/facility; however, any additional amount paid by the carrier pursuant to the arbitration award will not increase your cost-sharing liability above the amount indicated as your responsibility |

|  |  | on the second Explanation of Benefits associated with the last payment made to the health care professional/facility before any arbitration. If arbitration is conducted, you will also receive a final Explanation of Benefits that will show the total allowed charge/amount for the service(s). |
|---|---|---|

| Your Policy Covers: | What this Means: | How Am I Protected by NJ law? |
|---|---|---|
| Treatment from out-of-network health care professionals/ facilities if in-network health care professionals/facilities are unavailable. | Plans are required to have adequate networks to provide you with access to professionals/facilities within certain time/distance requirements so you can obtain medically necessary treatment of all illnesses or injuries covered by your plan. | You can request treatment from an out-of-network health care professional/facility when an in-network health care professional/facility is unavailable through an appeal, often called a request for an "in-plan exception." Please see the Department of Banking and Insurance's guide at: https://nj.gov/dobi/appeal/. |

[*Option 1* – *Add for Policies with Voluntary Out-of-Network Coverage*]

| Your Policy Covers: | What this Means: | How Am I Protected by NJ law? |
|---|---|---|
| Voluntary out-of-network services | You are covered for treatment by an out-of-network health care professional/facility when you knowingly, voluntarily and specifically select an out-of-network health care professional/facility, even if you have the opportunity to be serviced by an in-network health care professional/facility. We will cover voluntary out-of-network services as follows: [*INSERT TEXT DESCRIBING COST-SHARING FOR CONSUMER WITH REGARD TO THE ALLOWED CHARGE/AMOUNT*]. | Carriers must provide ready access to information about how to determine when a health care professional/facility is in-network. Please contact us if you have any questions about the status of a particular professional/facility. Additionally, health care professionals/facilities must disclose to you, in writing or on a website, the plans in which they participate as in-network providers. Note, indications that a professional/facility "accepts" a certain health plan does not necessarily indicate in-network status. So, when seeking treatment, you can check with both us and your prospective health care professional/facility. |

Page 28 of 29

| | | |
|---|---|---|
| | Please be advised that the ALLOWED CHARGE/AMOUNT (discussed above) is not the same as the amount billed by your Out-of-Network Health Care Professional/Facility, and is usually less. WE CALCULATE THE ALLOWED CHARGE/AMOUNT AS FOLLOWS: [*INSERT TEXT SPECIFYING THE METHOD USED TO DETERMINE THE ALLOWED CHARGE/AMOUNT If different sources for different types of services, please identify all sources by service type*]. | Carriers must provide a method to enable you to be able to calculate an estimate of out-of-network costs when voluntarily seeking to use an out-of-network health care professional/facility.    YOU CAN CONTACT US VIA THE METHODS ABOVE TO OBTAIN MORE INFORMATION REGARDING THE ALLOWED CHARGE/AMOUNTS FOR SPECIFIC SERVICES IF YOU CAN PROVIDE A CURRENT PROCEDURAL TERMINOLOGY (CPT) CODE. If you do not have a CPT code, you can estimate your costs by: [*Insert text describing how the estimates can be calculated by both current and prospective members. This could be through reference to a proprietary calculator, or through reference to sources for carrier's allowed charge/amounts and public database of billed fees*]. |
| | You will be RESPONSIBLE FOR PAYMENT OF: a) Your cost-sharing portion of the allowed charge/amount as disclosed above; PLUS, b) the difference between our allowed charge/amount and the amount the out-of-network health care professional/facility bills for the services (commonly referred to as the "balance bill"). | You can also visit our website above for examples of the average costs (allowed charge/amount, billed amount, consumer responsibility without cost-sharing under plan) for ten more frequently billed out-of-network services. |

[*Option 2* – *Add for Policies without Voluntary Out-of-Network Coverage*]

| Your Policy DOES NOT Cover: | What this Means: | How Am I Protected by NJ law? |
|---|---|---|
| Voluntary out-of-network services | You are not covered for treatment by an out-of-network health care professional/facility when you knowingly, voluntarily and specifically select an out-of-network professional/facility for treatment when you have the opportunity to be serviced by an in-network healthcare professional/facility. | As discussed above, you can request treatment from an out-of-network health care professional/facility when an in-network health care professional/facility is unavailable through an appeal, called a request for "in-plan exception." |

AV and DHT OON Bulletin 2018/BULLETINS

Page 29 of 29